# Exhibit F

*Execution Version*

**AMENDED AND RESTATED PLEDGE AND SECURITY AGREEMENT**

**among**

**PHILADELPHIA ENERGY SOLUTIONS REFINING AND MARKETING LLC,
as Grantor,**

**the other Grantors party hereto,**

**and**

**ICBC STANDARD BANK PLC,
as SOA Collateral Agent**

**Dated as of June 18, 2019**

## TABLE OF CONTENTS

**ARTICLE I. DEFINITIONS AND INTERPRETATION** ........................................................ 3

SECTION 1.1    Definitions; Interpretation............................................................. 3

SECTION 1.2    Resolution of Drafting Ambiguities............................................ 10

SECTION 1.3    Perfection Certificate ................................................................. 10

SECTION 1.4    Section References .................................................................... 10

**ARTICLE II. GRANTS OF SECURITY AND SECURED OBLIGATIONS** ..................... 10

SECTION 2.1    Grant of Security Interest .......................................................... 10

SECTION 2.2    Filings ......................................................................................... 12

SECTION 2.3    Excluded Property...................................................................... 13

SECTION 2.4    Cash Collateral........................................................................... 13

**ARTICLE III. PERFECTION; SUPPLEMENTS; FURTHER ASSURANCES; USE OF PLEDGED COLLATERAL** .................................................................................................. 14

SECTION 3.1    Financing Statements and Other Filings; Maintenance of Perfected Security Interest    14

SECTION 3.2    Other Actions ............................................................................. 14

SECTION 3.3    Joinder of Additional Grantors .................................................. 18

SECTION 3.4    Supplements; Further Assurances ............................................ 18

**ARTICLE IV. REPRESENTATIONS, WARRANTIES AND COVENANTS** ................... 19

SECTION 4.1    Title ............................................................................................. 19

SECTION 4.2    Validity and Priority of Security Interest.................................... 19

SECTION 4.3    Defense of Claims; Transferability of Pledged Collateral ........ 19

SECTION 4.4    Other Financing Statements ..................................................... 20

SECTION 4.5    Chief Executive Office; Change of Name; Jurisdiction of Organization . 20

SECTION 4.6    Location of Inventory and Equipment ....................................... 20

SECTION 4.7    Consents, etc. ............................................................................ 21

SECTION 4.8    Pledged Collateral ..................................................................... 21

SECTION 4.9    Insurance .................................................................................... 21

SECTION 4.10   Trademarks ................................................................................ 21

SECTION 4.11   Pledged Equity Interests .......................................................... 22

SECTION 4.12   Third Party Consent Agreements.............................................. 23

**ARTICLE V. [RESERVED]** ....................................................................................... 24

**ARTICLE VI. CERTAIN PROVISIONS CONCERNING RECEIVABLES** .................... 24

SECTION 6.1    Maintenance of Records ........................................................... 24

SECTION 6.2    Modification of Terms, etc. ........................................................ 24

SECTION 6.3    Collection.................................................................................... 24

i

TABLE OF CONTENTS

**ARTICLE VII. TRANSFERS; RENEWABLE FUEL STANDARDS** ................................. 25

SECTION 7.1     Transfers of Pledged Collateral ................................. 25

SECTION 7.2     Compliance with Renewable Fuel Standards ......................... 25

**ARTICLE VIII. REMEDIES** ................................................. 25

SECTION 8.1     Remedies in respect of the Pledged Collateral ......................... 25

SECTION 8.2     Notice of Sale ................................................. 27

SECTION 8.3     Waiver of Notice and Claims ..................................... 28

SECTION 8.4     Certain Sales of Pledged Collateral ............................... 28

SECTION 8.5     No Waiver; Cumulative Remedies ................................. 29

SECTION 8.6     Deficiency ..................................................... 29

SECTION 8.7     Application of Proceeds .......................................... 29

**ARTICLE IX. [RESERVED]** ................................................. 30

**ARTICLE X. MISCELLANEOUS** ............................................. 30

SECTION 10.1     Concerning SOA Collateral Agent. ............................... 30

SECTION 10.2 Attorney-in-Fact     SOA Collateral Agent May Perform; SOA Collateral Agent Appointed 34

SECTION 10.3     Continuing Security Interest; Assignment ........................... 34

SECTION 10.4     Termination; Release ........................................... 35

SECTION 10.5     Modification in Writing ......................................... 35

SECTION 10.6     Notices ....................................................... 35

SECTION 10.7 Jury Trial     Governing Law, Consent to Jurisdiction and Service of Process; Waiver of 36

SECTION 10.8     Severability of Provisions ....................................... 36

SECTION 10.9     Execution in Counterparts ....................................... 36

SECTION 10.10     Business Days ................................................. 36

SECTION 10.11     No Credit for Payment of Taxes or Imposition ..................... 36

SECTION 10.12 Secured Parties     No Claims Against SOA Collateral Agent or other Supply and Offtake 36

SECTION 10.13     No Release ................................................... 36

SECTION 10.14     Obligations Absolute ........................................... 37

SECTION 10.15     Intercreditor Agreements ....................................... 37

SECTION 10.16     Effect of this Agreement; Reaffirmation ........................... 38

EXHIBIT 1     Form of Joinder Agreement

**AMENDED AND RESTATED PLEDGE AND SECURITY AGREEMENT**

This **AMENDED AND RESTATED PLEDGE AND SECURITY AGREEMENT**, dated as of June 18, 2019 (this "**Agreement**"), among **PHILADELPHIA ENERGY SOLUTIONS REFINING AND MARKETING LLC,** a limited liability company organized under the laws of Delaware ("**PESRM**"), as grantor, and the other Grantors listed on the signature pages hereto or becoming party hereto by execution and delivery of a Joinder Agreement (together with PESRM, the "**Grantors**," and each a "**Grantor**"), in favor of **ICBC STANDARD BANK PLC**, a public limited company organized under the laws of England and Wales, in its capacity as collateral agent for the Supply and Offtake Secured Parties (in such capacity and together with any successors in such capacity, the "**SOA Collateral Agent**").

## RECITALS

**WHEREAS**, as of the date hereof, the ICBCS SOA Secured Party, MLC, PESRM and other parties as relevant are hereby executing new and amended documents in order to close into Phase III of the transaction, which will consist of the ICBCS SOA Secured Party providing intermediation services for Refined Product to PESRM, in addition to the intermediation services for Crude Oil that commenced on the Phase II Closing Date;

**WHEREAS**, as part of the Phase II Closing, PESRM and the ICBCS SOA Secured Party entered into that certain Fifth Amended and Restated Supply and Offtake Agreement, dated as of the Phase II Closing Date, among PESRM, the guarantors from time to time party thereto (the "**Guarantors**") and the ICBCS SOA Secured Party (the "**Fifth A&R SOA**");

**WHEREAS**, in connection with the Fifth A&R SOA, PESRM and the other Grantors entered into that certain Pledge and Security Agreement, dated as of October 22, 2018 (the "**Existing Security Agreement**") in favor of the SOA Collateral Agent for the benefit of the Supply and Offtake Secured Parties;

**WHEREAS**, as part of the Phase III Closing, PESRM and the ICBCS SOA Secured Party have agreed to amend and restate the Fifth A&R SOA pursuant to that certain Sixth Amended and Restated Supply and Offtake Agreement, dated as of the date hereof, among PESRM, the Guarantors and the ICBCS SOA Secured Party (the "**Supply and Offtake Agreement**");

**WHEREAS**, in connection with the Supply and Offtake Agreement, PESRM and the ICBCS SOA Secured Party have agreed to amend and restate (a) that certain Consulting Agreement, dated as of the Phase II Closing Date, between the ICBCS SOA Secured Party and PESRM, pursuant to that certain Amended and Restated Consulting Agreement, dated as of the date hereof (the "**Consulting Agreement**"), and (b) certain other PESRM Transaction Documents;

**WHEREAS**, PESRM and each other Grantor will receive substantial benefits from the execution, delivery and performance of the obligations under (a) the Supply and Offtake Agreement, (b) the Consulting Agreement and (c) the other PESRM Transaction Documents, and each is, therefore, willing to enter into this Agreement;

**WHEREAS**, this Agreement is given by the Grantors in favor of the SOA Collateral Agent for the benefit of the Supply and Offtake Secured Parties to secure the payment and performance of all of the Secured Obligations;

**WHEREAS**, each Guarantor has, pursuant to the Supply and Offtake Agreement, unconditionally guaranteed the Secured Obligations; and

**WHEREAS**, it is a condition to the effectiveness of the Supply and Offtake Agreement that each of the Grantors execute and deliver this Agreement.

## AGREEMENT

**NOW THEREFORE**, in consideration of the foregoing premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Grantors and the SOA Collateral Agent hereby agree as follows:

## PRELIMINARY STATEMENT

1.  The parties hereto understand, agree and intend that the transactions contemplated by the Supply and Offtake Agreement and the other PESRM Transaction Documents will constitute true sales and absolute conveyances such that the ICBCS SOA Secured Party will own and hold title to any and all Crude Oil and Refined Products purchased from the Grantors or third parties free and clear of any claims by the Grantors or their respective debtors' estates in the event of any Grantor's insolvency. In furtherance and support of this understanding, the parties hereby note:

    a.  The ICBCS SOA Secured Party has the benefits and rewards of ownership of all ICBCS Titled Assets.

    b.  The Bankruptcy Court order (I) Approving Technical Modifications to the Plan and Confirmation Order Regarding the Debtors' New Intermediation Facility, and (II) Granting Related Relief Docket No. 463, entered June 4, 2018 amended paragraph 86 of the Confirmation Order to provide, inter alia, that the transfers of Inventory under the Supply and Offtake Agreement shall be deemed absolute conveyances and true sales such that the ICBCS SOA Secured Party will take title to and own such Inventory, as referred to in the recitals of the Supply and Offtake Agreement.

    c.  The Bankruptcy Court order (I) Approving Certain Implementation Conditions With Respect to New Intermediation Facility and (II) Granting Related Relief Docket No. 499, entered July 23, 2018 provides, inter alia, that the transfers of hydrocarbons under the Supply and Offtake Agreement shall be deemed absolute conveyances and true sales such that the ICBCS SOA Secured Party will take title to and own such Inventory, as referred to in the recitals of the Supply and Offtake Agreement.

2.  In order to more fully secure the obligations of the Grantors to the ICBCS SOA Secured Party under the PESRM Transaction Documents in the event of any Re-

Characterization, the Grantors have expressly agreed to include in the Pledged Collateral herein any and all right, title and interest any of them may have in and to the ICBCS Titled Assets following any Re-Characterization.

# ARTICLE I.

## DEFINITIONS AND INTERPRETATION

SECTION 1.1 Definitions; Interpretation.

(a)    Unless otherwise defined herein or in the Supply and Offtake Agreement, capitalized terms used herein that are defined in the UCC shall have the meanings assigned to them in the UCC; provided, that in any event, the following terms shall have the meanings assigned to them in the UCC:

**"Accounts"; "Certificated Securities"; "Chattel Paper"; "Commercial Tort Claims"; "Deposit Account"; "Documents"; "Electronic Chattel Paper"; "Equipment"; "Fixtures"; "Inventory"; "Letter-of-Credit Rights"; "Letters of Credit"; "Money"; "Payment Intangibles"; "Proceeds"; "Records"; "Security Entitlement"; "Supporting Obligations"; and "Tangible Chattel Paper".**

(b)    Terms used but not otherwise defined herein that are defined in the Supply and Offtake Agreement shall have the meanings given to them in the Supply and Offtake Agreement. *Section 1.02* of the Supply and Offtake Agreement shall apply herein *mutatis mutandis*.

(c)    The following terms shall have the following meanings:

"**Account Debtor**" shall mean each Person who is obligated on a Receivable or Supporting Obligation related thereto.

"**Agreement**" shall have the meaning assigned to such term in the preamble hereto.

"**Applicable Owner**" shall have the meaning assigned to such term in Section 4.12.

"**Bankruptcy Court**" shall mean the United States Bankruptcy Court for the District of Delaware (such court, or another federal court exercising jurisdiction over the January 21, 2018 PESRM and certain of its affiliates filing of voluntary petitions for relief commencing cases under Chapter 11 of the Bankruptcy Code captioned *In re PES Holdings LLC, et al.*, Chapter 11 Case No. 18-10122 (KG) (Jointly Administered)).

"**Catalyst Assets**" shall mean all catalyst assets and inventory, precious metals assets and precious metals inventory and all additions, accessions and all rights and privileges related thereto.

"**Collateral Support**" shall mean all property (real or personal) assigned, hypothecated or otherwise securing any Pledged Collateral and shall include any security agreement or other agreement granting a Lien on such real or personal property.

3

"**Consulting Agreement**" shall have the meaning assigned to such term in the recitals hereto.

"**Contracts**" shall mean, collectively, with respect to the Grantors, all sale, service, performance, equipment or property lease contracts, agreements and grants and all other contracts, agreements or grants (in each case, whether written or oral, or third party or intercompany), in each case, between a Grantor and any third party, and all assignments, amendments, restatements, supplements, extensions, renewals, replacements or modifications thereto or thereof.

"**Control**" shall mean (i) in the case of each Deposit Account, "**control**," as such term is defined in *Section 9-104* of the UCC, and (ii) in the case of any Security Entitlement, "**control**," as such term is defined in *Section 8-106* of the UCC.

"**Crude Oil**" has the meaning given to such term in the Supply and Offtake Agreement.

"**Deposit Account Control Agreement**" shall mean (i) any control agreement entered into by and among a Grantor, SOA Collateral Agent and a depositary institution acceptable to SOA Collateral Agent, pursuant to which SOA Collateral Agent is granted Control over such Grantor's Deposit Accounts, and (ii) an agreement in form and substance reasonably satisfactory to the SOA Collateral Agent establishing the Control of the Term Loan Agent (as collateral agent and as bailee for the SOA Collateral Agent pursuant to the Term Intercreditor Agreement) with respect to any Deposit Account.

"**EMTS**" shall mean the EPA Moderated Transaction System as defined in 40 C.F.R. § 80.1401 and regulated under Renewable Fuel Standards.

"**EPA**" shall mean the United States Environmental Protection Agency and any agency that is successor thereto.

"**Equity Interests**" shall mean (a) in the case of a corporation, corporate stock, (b) in the case of an association or business entity, any and all shares, interests, participations, rights or other equivalents (however designated) of corporate stock, (c) in the case of a partnership or limited liability company, partnership interests (whether general or limited) or membership interests, and (d) any other interest or participation that confers on a Person the right to receive a share of the profits and losses of, or distributions of assets of, the issuing Person.

"**Event of Default**" shall mean a PESRM Event of Default (as defined in the Supply and Offtake Agreement).

"**Excluded Deposit Account**" shall mean any Deposit Account of a Grantor (i) for which all or substantially all of the funds on deposit therein are used solely to fund payroll, 401(k) and other retirement plans and employee benefits or health care benefits, and any trust accounts with respect to any of the foregoing or (ii) holding at all times less than $2,000,000 in the aggregate, together with all such other Deposit Accounts excluded pursuant to this clause (ii).

4

"**Excluded Property**" shall mean:

(a)        assets owned by a Grantor on the date hereof or hereafter acquired that are subject to a Lien securing a Purchase Money Obligation or Capital Lease Obligation permitted to be incurred pursuant to the provisions of the Supply and Offtake Agreement and any cash Proceeds thereof, if the contract or other agreement in which such Lien is granted (or the documentation providing for such Purchase Money Obligation or Capital Lease Obligation) validly prohibits the creation of any other Lien on such assets or Proceeds thereof, it being understood and agreed that, upon the termination of such contract, agreement or documentation, or the extinguishment of the Lien securing such Purchase Money Obligation or Capital Lease Obligation, such assets and Proceeds shall cease to be Excluded Property unless they shall otherwise independently continue to qualify as such;

(b)        to the extent constituting Inventory, Catalyst Assets;

(c)        cash and Cash Equivalents to the extent a Lien on such cash or Cash Equivalents is granted by a Grantor pursuant to *Section 11.02(c)*, *(d) and (ee)* of the Supply and Offtake Agreement;

(d)        (A) each Excluded Deposit Account, to the extent that such Deposit Account, if an Excluded Deposit Account pursuant to clause (ii) of the definition thereof, together with all other Excluded Deposit Accounts pursuant to clause (ii) of the definition thereof, continues to qualify as such pursuant to clause (ii) of the definition thereof and (B) each Excluded Deposit Account pursuant to clause (i) of the definition thereof;

(e)        any assets, the granting or perfection of a Lien on which is prohibited by any Applicable Law to the extent such prohibition is not rendered ineffective by the UCC or other Applicable Law;

(f)        any asset, property or property right of a de minimis value in which a security interest in favor of the SOA Collateral Agent is prohibited by, or constitutes a breach or default under or results in the termination of or requires any consent not obtained under, any contract, license, agreement, instrument or other document evidencing or giving rise to such property, except to the extent that the term in such contract, license, agreement, instrument or other document or shareholder or similar agreement providing for such prohibition, breach, default or termination or requiring such consent is ineffective under Applicable Law;

(g)        Voting Stock of any Subsidiary which is a Foreign Subsidiary or CFC Holdco (as defined in the Term Intercreditor Agreement) representing in excess of 65% of the total voting power of all outstanding Voting Stock of such Subsidiary;

(h)        any asset consisting of a leasehold interest in real property;

(i)        cash or Cash Equivalents securing obligations under Swap Agreements or Specified Transactions, to the extent a Lien on such cash or Cash Equivalents is granted by a Grantor pursuant to *Section 11.02(gg)* of the Supply and Offtake Agreement;

(j)     any "Collateral" as defined in that certain Promissory Note, dated as of August 7, 2018 (without giving effect to any subsequent amendments), among Philadelphia Energy Solutions Refining and Marketing LLC, Sunoco Logistics Partners Operations L.P. and the other parties thereto;

(k)     any Vehicles;

(l)     ICBCS Titled Assets;

(m)     any commodity account of a Grantor in which a Permitted Lien has been pledged thereon in favor of a future commission merchant and any Swap Agreement or Specified Transaction contained therein that is permitted under the Supply and Offtake Agreement; provided that this clause (m) shall not extend to or include any cash or Cash Equivalents or any assets (other than such Swap Agreement or Specified Transaction) contained in or covered by such commodity account; provided further that, the foregoing proviso shall not be deemed to limit in any way any other clause of the definition of "Excluded Property";

(n)     any intent-to-use Trademark application (but only until the filing of a "Statement of Use" or "Amendment to Allege Use" with respect thereto), to the extent, if any, that, and solely during the period, if any, in which the grant of a security interest therein would impair the validity or enforceability of such intent-to-use Trademark application or registration issuing therefrom; and

(o)     any assets with respect to which the SOA Collateral Agent determines, in its sole discretion, that the costs of obtaining security interests therein exceeds the value of the security afforded thereby.

"**Existing Security Agreement**" shall have the meaning assigned to such term in the recitals hereto.

"**General Intangibles**" shall mean, collectively, with respect to each Grantor, all "**general intangibles**," as such term is defined in the UCC, of the Grantor and, in any event, includes (i) all of such Grantor's rights, title and interest in, to and under all Contracts and insurance policies (including all rights and remedies relating to monetary damages, including indemnification rights and remedies, and claims for damages or other relief pursuant to or in respect of any Contract), (ii) all know-how and warranties relating to any of the Pledged Collateral, (iii) any and all other rights, claims, choses-in-action and causes of action of such Grantor against any other person and the benefits of any and all collateral or other security given by any other person in connection therewith, (iv) all guarantees, endorsements and indemnifications on, or of, any of the Pledged Collateral, (v) all lists, books, records, correspondence, ledgers, printouts, files (whether in printed form or stored electronically), tapes and other papers or materials containing information relating to any of the Pledged Collateral, including all customer or tenant lists, identification of suppliers, data, plans, blueprints, specifications, designs, drawings, appraisals, recorded knowledge, surveys, studies, engineering reports, test reports, manuals, standards, processing standards, performance standards, catalogs, research data, computer and automatic machinery software and programs and the like, field repair data, accounting information pertaining to such Grantor's operations or any of the Pledged

6

Collateral and all media in which or on which any of the information or knowledge or data or records may be recorded or stored and all computer programs used for the compilation or printout of such information, knowledge, records or data, (vi) all licenses, consents, permits, variances, certifications, authorizations and approvals, however characterized, now or hereafter acquired or held by such Grantor, including building permits, certificates of occupancy, environmental certificates, industrial permits or licenses and certificates of operation and (vii) all rights to reserves, deferred payments, deposits, refunds, indemnification of claims and claims for tax or other refunds against any Governmental Authority.

"**Grantors**" shall have the meaning assigned to such term in the preamble.

"**Guarantors**" shall have the meaning assigned to such term in the recitals.

"**ICBCS Liquids**" shall have the meaning assigned to such term in the Master Services Agreement.

"**ICBCS SOA Secured Party**" shall mean ICBC Standard Bank Plc, in its capacity as intermediation provider under the Supply and Offtake Agreement.

"**ICBCS Titled Assets**" shall mean Crude Oil and Refined Products purchased by the ICBCS SOA Secured Party through various purchase and sale agreements or novated contracts and all proceeds thereof with third parties and/or PESRM as contemplated in the (i) Supply and Offtake Agreement and (ii) Marketing and Sourcing Agreement, irrespective of any Re-Characterization; provided that, if and to the extent that the ICBCS SOA Secured Party has sold and transferred title and risk of loss to its Crude Oil and Refined Products to third parties (including PESRM), such Crude Oil and Refined Products will no longer constitute ICBCS Titled Assets.

"**Indemnitee**" has the meaning set forth in Section 10.01(l).

"**Instruments**" shall mean, collectively, with respect to each Grantor, all "**instruments**," as such term is defined in Article 9, rather than Article 3, of the UCC, and includes all promissory notes, drafts, bills of exchange or acceptances.

"**Intercreditor Agreements**" shall have the meaning assigned to such term in Section 10.15.

"**Issuer**" shall mean an issuer of Pledged Equity Interests.

"**Joinder Agreement**" shall mean an agreement substantially in the form of Exhibit 1.

"**Marketing and Sourcing Agreement**" has the meaning given to such term in the Supply and Offtake Agreement.

"**Master Transaction Agreement**" shall mean the Master Transaction Agreement dated as of August 7, 2018, by and between MLC, the ICBCS SOA Secured Party, PESRM and the other parties thereto.

"**MLC**" shall mean Merrill Lynch Commodities, Inc.

"**MLC/ICBCS Intercreditor Agreement**" shall have the meaning assigned to such term in <u>Section 10.15</u>.

"**Perfection Certificate**" shall mean (i) that certain perfection certificate, dated as of the date hereof and executed and delivered by the Grantors in favor of the SOA Collateral Agent for the benefit of the Supply and Offtake Secured Parties, and (ii) each Perfection Certificate (which shall be in form and substance reasonably acceptable to the SOA Collateral Agent) executed and delivered by the Grantors in favor of the SOA Collateral Agent for the benefit of the Supply and Offtake Secured Parties contemporaneously with the execution and delivery of each Joinder Agreement executed in accordance with <u>Section 3.3</u>, in each case, as the same may be amended, amended and restated, supplemented or otherwise modified from time to time in accordance with the Supply and Offtake Agreement or upon the reasonable request of the SOA Collateral Agent.

"**Permitted Liens**" shall mean Liens permitted by *Section 11.02* of the Supply and Offtake Agreement.

"**Person**" shall mean any natural person, corporation, limited liability company, trust, joint venture, association, company, partnership, governmental authority or other entity.

"**PESRM**" shall have the meaning assigned to such term in the preamble hereto.

"**Pledged Collatera**l" shall have the meaning assigned to such term in <u>Section 2.1(a)</u>.

"**Pledged Equity Interests**" shall have the meaning assigned to such term in <u>Section 2.1(a)</u>.

"**Receivables**" shall mean all (i) Accounts, (ii) Chattel Paper, (iii) Payment Intangibles, (iv) General Intangibles, (v) Instruments and (vi) to the extent not otherwise covered above, all other rights to payment, whether or not earned by performance, for goods or other property sold, leased, licensed, assigned or otherwise disposed of, or services rendered or to be rendered, regardless of how classified under the UCC together with all of the Grantors' rights, if any, in any goods or other property giving rise to such right to payment and all Collateral Support and Supporting Obligations related thereto and all Records relating thereto.

"**Re-Characterization**" shall mean the actual or purported re-characterization by any court, arbitrator or governmental authority of all or part of the transactions contemplated by the PESRM Transaction Documents (whether as a financing transaction or otherwise) in such manner as to (a) cause any ICBCS Titled Assets to not be owned by (or purportedly to not be owned by) the ICBCS SOA Secured Party, (b) give any Grantor rights, title or interest in any ICBCS Titled Assets (other than those of a true seller thereof), or (c) otherwise purport to include any ICBCS Titled Assets in the debtor's estate of any Grantor. "**Re-Characterized**" has a meaning correlative thereto.

"**Related Parties**" shall mean, with respect to any Person, such Person's partners, directors, officers, employees, agents and advisors.

8

"**Renewable Fuel Standards**" shall mean the regulatory requirements set forth in 40 C.F.R. Part 80, Subpart M, §§ 80.1400 et seq.

"**RIN**" or "**Renewable Identification Number**" has the meaning set forth in 40 C.F.R. § 80.1401 and regulated as part of Renewable Fuel Standards.

"**RVO**" shall mean any Renewable Volume Obligation as defined in 40 C.F.R. §80.1407 and regulated as part of Renewable Fuel Standards.

"**Secured Obligations**" shall mean the "Obligations", as such term is defined in the Supply and Offtake Agreement, including any variations thereto or alternative obligations owing to any or all Supply and Offtake Secured Parties as may be deemed to exist as a result of any Re-Characterization.

"**SOA Collateral Agent**" shall have the meaning assigned to such term in the preamble hereto.

"**Supply and Offtake Agreement**" shall have the meaning assigned to such term in the recitals hereto.

"**Supply and Offtake Secured Parties**" shall mean the SOA Collateral Agent and the ICBCS SOA Secured Party.

"**Supply and Offtake Security Documents**" has the meaning given to such term in the Supply and Offtake Agreement.

"**Term Intercreditor Agreement**" shall have the meaning assigned to such term in Section 10.15.

"**Term Loan Agent**" shall have the meaning assigned to such term in the Term Intercreditor Agreement.

"**Term Loan Priority Collateral**" shall have the meaning assigned to such term in the Term Intercreditor Agreement.

"**Term Loan Secured Obligations**" shall have the meaning assigned to such term in the Term Intercreditor Agreement.

"**Term Loan Termination Date**" shall have the meaning assigned to such term in the Term Intercreditor Agreement.

"**Trademarks**" shall mean (i) all trademarks, trade names, corporate names, company names, business names, fictitious business names, trade styles, services marks, logos and other source or business identifiers, and all goodwill associated therewith, now existing or hereafter adopted or acquired, all registrations and recordings thereof, and all applications in connection therewith, whether in the United States Patent and Trademark Office or in any similar office or agency of the United States, any State thereof or any other country or any political subdivision thereof, or otherwise, and all common-law rights related thereto, including any of the foregoing

9

referred to in *Schedule 9(a)* or *9(b)* to the Perfection Certificate, and (ii) the right to obtain all renewals thereof.

"**transferable record**" shall have the meaning assigned to such term in <u>Section 3.2(c)</u>.

"**UCC**" shall mean the Uniform Commercial Code as in effect from time to time in the State of New York; *provided, however*, that, at any time, if by reason of mandatory provisions of law, any or all of the perfection or priority of the SOA Collateral Agent's Lien on any item or portion of the Pledged Collateral is governed by the Uniform Commercial Code as in effect in a jurisdiction other than the State of New York, the term "**UCC**" shall mean the Uniform Commercial Code as in effect, at such time, in such other jurisdiction for purposes of the provisions hereof relating to such perfection or priority and for purposes of definitions relating to such provisions.

"**Vehicles**" shall mean all railcars, cars, trucks, trailers, construction and earth moving equipment and other vehicles covered by a certificate of title law of any state and all tires and other appurtenances to any of the foregoing.

"**Voting Stock**" shall have the meaning assigned to such term in the Term Intercreditor Agreement.

SECTION 1.2 <u>Resolution of Drafting Ambiguities</u>.  Each Grantor acknowledges and agrees that it was represented by counsel in connection with the execution and delivery hereof, that it and its counsel reviewed and participated in the preparation and negotiation hereof and that it shall not cite to any rule of construction, or make any claim or argument, to the effect that ambiguities should be resolved against the drafting party (*i.e.*, the SOA Collateral Agent) in the interpretation of this Agreement.

SECTION 1.3 <u>Perfection Certificate</u>.  The Perfection Certificate is hereby incorporated by reference herein with the same effect as if set forth in its entirety herein.  Each Grantor and the SOA Collateral Agent agree that the Perfection Certificate, and all descriptions of Pledged Collateral, and all schedules, amendments and supplements hereto and thereto, are and shall at all times remain a part of this Agreement.

SECTION 1.4 <u>Section References</u>. Each reference to a Section herein shall, unless otherwise specified, refer to the corresponding section of this Agreement.

## ARTICLE II.

## GRANTS OF SECURITY AND SECURED OBLIGATIONS

SECTION 2.1 <u>Grant of Security Interest</u>.

(a)     As collateral security for the payment and performance in full of all of the Secured Obligations, each Grantor hereby pledges and grants to the SOA Collateral Agent for the benefit of the Supply and Offtake Secured Parties, a Lien on all of the right, title and interest of such Grantor in, to and under the following property, wherever located, and whether now

existing or hereafter arising or acquired from time to time (collectively, the "**Pledged Collateral**"):

(i)    all Accounts;

(ii)    all Inventory, including all raw materials, work in process and finished goods, relating to any of the foregoing items in this clause (ii);

(iii)    all Renewable Identification Numbers wherever located;

(iv)    all Money and Deposit Accounts;

(v)    all Letters of Credit and Letter-of-Credit Rights supporting payment of any of the foregoing;

(vi)    all Equipment;

(vii)    all Fixtures;

(viii)    all Trademarks;

(ix)    all Equity Interests in each Subsidiary directly owned by such Grantor as of the date hereof (including the Pledged Equity Interests listed in *Schedule 7* to the Perfection Certificate) and any other Equity Interests in any Subsidiary directly owned in the future by such Grantor, together in each case with (A) all certificates representing such Equity Interests, (B) all shares, securities, cash or other property representing a dividend on or a distribution or return of capital on or in respect of such Equity Interests, or resulting from a split-up, revision, reclassification or other like change thereof or otherwise received in exchange therefor, and any warrants, rights or options issued to the holders of, or otherwise in respect of, such Equity Interests, and (C) without prejudice to any provision of the Supply and Offtake Agreement prohibiting any merger or consolidation by PESRM or any of its Subsidiaries, all Equity Interests of any successor entity of any such merger or consolidation (collectively, the "**Pledged Equity Interests**");

(x)    to the extent evidencing any of the foregoing, (A) Documents, (B) Instruments, (C) General Intangibles, (D) Commercial Tort Claims, and (E) Supporting Obligations and all other forms of obligations owing to any Grantor or in which any Grantor may have any interest, however created or arising and whether or not earned by performance;

(xi)    to the extent not otherwise included above, all Records evidencing any of the foregoing; and

(xii)    all Proceeds and products of each of the foregoing and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, and any and all Proceeds of any insurance, indemnity, warranty or guaranty payable to such Grantor from time to time with respect to any of the foregoing.

11

Notwithstanding anything to the contrary contained in <u>clauses (i)</u> through <u>(xii)</u> above, inclusive, the security interest created by this Agreement shall not extend to, and the term "*Pledged Collateral*" shall not include, any Excluded Property (unless any such property ceases to be "Excluded Property").

(b)     To the extent that the Supply and Offtake Agreement or any other PESRM Transaction Document or any transactions contemplated thereby are ever Re-Characterized or subject to any Re-Characterization, each Grantor, as security for (i) the Secured Obligations and (ii) any amounts paid by the ICBCS SOA Secured Party to any Grantor as purchase price that are Re-Characterized as loans or other extensions of credit from the ICBCS SOA Secured Party to any or all of the Grantors, hereby grants (effective as of the date of this Agreement) to the ICBCS SOA Secured Party and its permitted successors and assigns, a continuing security interest in and to, and a right of set off against, all right, title and interest in or to all ICBCS Titled Assets.

(c)     The SOA Collateral Agent (on behalf of the Supply and Offtake Secured Parties) agrees that its security interest in all payments and distributions of property of any type which are permitted pursuant to the terms of the Supply and Offtake Agreement and made by any Issuer to a Grantor, solely to the extent that such payments or distributions are not Pledged Collateral in respect of, or distributed on account of, any of the Grantor's Pledged Equity Interests and permitted by the terms of the PESRM Transaction Documents, shall be automatically released (for the avoidance of doubt, without any further action by the SOA Collateral Agent) from the security interest granted hereunder and shall no longer be part of the "Pledged Collateral" upon the making of such payment and/or distribution.

SECTION 2.2 <u>Filings</u>.

(a)     Each of the Grantors hereby irrevocably authorizes the SOA Collateral Agent and its counsel and representatives, at any time and from time to time, to file in any relevant jurisdiction any financing statements (including any amendments or continuations thereto and any fixture filings) containing information required by Article 9 of the UCC or other applicable law of such jurisdiction for the filing of any financing statement, continuation statement, amendment or other documents relating to the Pledged Collateral (and ratifies any such filing made prior to the date hereof). The Grantors shall provide all information described in the immediately preceding sentence to the SOA Collateral Agent promptly upon request by the SOA Collateral Agent. In addition, each Grantor authorizes and agrees that such financing statements may contain an indication and description of collateral that describes the Pledged Collateral in the same manner as described herein or may contain an indication or description of collateral that describes the Pledged Collateral in any other manner as the SOA Collateral Agent may determine is necessary, advisable or prudent to ensure the perfection of the security interests granted hereunder, including describing such property as "all assets whether now owned or hereafter acquired", "all assets of the Debtor", "all assets whether now existing or hereafter arising" or "all personal property whether now owned or hereafter acquired". Without derogating the Liens granted hereunder, at any time from time to time, at the sole expense of any Grantor, the SOA Collateral Agent shall execute and deliver to such Grantor or otherwise authorize the filing of such instruments, including any financing statement amendment, as such Grantor may reasonably request, to confirm, evidence or otherwise reflect in the public record the exclusion

from the Pledged Collateral of all or any portion of the Excluded Property. Furthermore, the SOA Collateral Agent and its counsel and representatives are hereby authorized to make any such filing or take other actions necessary to ensure the validity and perfection of the Liens on the Pledged Collateral contemplated in this Agreement. Notwithstanding the foregoing, any failure on the part of the SOA Collateral Agent to make any of the aforementioned filings or take any of the aforementioned actions shall not impair, limit or otherwise affect the Liens and security interests granted herein, and such Liens and security interests shall be fully and properly perfected (including without limitation via perfection in favor of the Term Loan Agent as collateral agent and as bailee for the SOA Collateral Agent pursuant to the Term Intercreditor Agreement) without any such filings or actions.

(b)     Each of the Grantors hereby irrevocably authorizes the ICBCS SOA Secured Party and its counsel and representatives, at any time and from time to time, to file in any relevant jurisdiction any financing statements (including any amendments or continuations thereto and any fixture filings) containing information required by Article 9 of the UCC or other applicable law of such jurisdiction for the filing of any financing statement, continuation statement, amendment or other documents relating to the ICBCS Titled Assets (and ratifies any such filing made prior to the date hereof). The Grantors shall provide all information described in the immediately preceding sentence to the ICBCS SOA Secured Party promptly upon request by the ICBCS SOA Secured Party.

SECTION 2.3 Excluded Property. The Grantors shall, at the reasonable request of the SOA Collateral Agent, give written notice to the SOA Collateral Agent identifying in reasonable detail the Excluded Property and shall provide to the SOA Collateral Agent such other information regarding the Excluded Property as the SOA Collateral Agent may reasonably request.

SECTION 2.4 Cash Collateral.

(a)     Notwithstanding anything to the contrary herein, in accordance with *Section 3.3(e)* of the Master Transaction Agreement, on the date hereof, the ICBCS SOA Secured Party shall release and return to each Grantor all Specified Cash Collateral (as defined in the Master Transaction Agreement) posted by such Grantor to the ICBCS SOA Secured Party pursuant to the Master Transaction Agreement in accordance with and pursuant to the terms set forth in *Section 3.3(e)* thereof, *provided*, for the avoidance of doubt, that the SOA Collateral Agent shall retain a Lien on such Money to the extent that it otherwise constitutes "*Pledged Collateral*" hereunder; and

(b)     PESRM shall maintain (or cause to be maintained) with the SOA Collateral Agent cash collateral as required pursuant to the Supply and Offtake Agreement.

**ARTICLE III.**

**PERFECTION; SUPPLEMENTS; FURTHER ASSURANCES;
USE OF PLEDGED COLLATERAL**

SECTION 3.1 <u>Financing Statements and Other Filings; Maintenance of Perfected Security Interest</u>.  Each Grantor represents and warrants that all financing statements, agreements, instruments and other documents necessary to perfect the security interest granted by it (to the extent such security interest can be perfected by such filings and other actions) to the SOA Collateral Agent in respect of the Pledged Collateral have been delivered to the SOA Collateral Agent in completed and, to the extent necessary or appropriate, duly executed form for filing in each governmental, municipal or other office specified in *Schedule 4* to the Perfection Certificate.  Each Grantor agrees that at the sole cost and expense of the Grantors, the Grantors will maintain the security interest created by this Agreement in the Pledged Collateral as a perfected security interest (including without limitation via perfection in favor of the Term Loan Agent as collateral agent and as bailee for the SOA Collateral Agent pursuant to the Term Intercreditor Agreement).

SECTION 3.2 <u>Other Actions</u>.  In order to further ensure the attachment, perfection and priority of, and the ability of the SOA Collateral Agent to enforce, the SOA Collateral Agent's Lien on the Pledged Collateral, each Grantor represents and warrants (as to itself) as follows and agrees, in each case at the Grantors' own expense, to take the following actions with respect to the following Pledged Collateral:

(a)    <u>Instruments and Tangible Chattel Paper</u>.  As of the date hereof, no amounts payable under or in connection with any of the Pledged Collateral with an aggregate value in excess of $10,000 are evidenced by any Instrument or Tangible Chattel Paper other than such Instruments and Tangible Chattel Paper listed in *Schedule 8* to the Perfection Certificate. Subject to the Intercreditor Agreements, to the extent such Instrument or item of Tangible Chattel Paper has a value in excess of $10,000 in the aggregate for all Grantors, each such Instrument and each item of Tangible Chattel Paper listed in *Schedule 8* to the Perfection Certificate has been properly endorsed, assigned and delivered to the SOA Collateral Agent, accompanied by instruments of transfer or assignment duly executed in blank.  Subject to the terms of the Intercreditor Agreements, if any amount then payable under or in connection with any of the Pledged Collateral shall be evidenced by any Instrument or Tangible Chattel Paper, and such amount, together with all amounts payable evidenced by any Instrument or Tangible Chattel Paper not previously delivered to the SOA Collateral Agent exceeds $10,000 in the aggregate for all Grantors, the Grantor acquiring such Instrument or Tangible Chattel Paper shall promptly (but in any event within five (5) Business Days after receipt thereof) endorse, assign and deliver the same to the SOA Collateral Agent, accompanied by such instruments of transfer or assignment duly executed in blank as the SOA Collateral Agent may from time to time specify.

(b)    <u>Deposit Accounts</u>.  As of the date hereof, the Grantors have no Deposit Accounts other than the accounts listed in *Schedule 5* to the Perfection Certificate.  The SOA Collateral Agent has a security interest in each Deposit Account specified in *Schedule 5* to the Perfection Certificate (other than in the case of an Excluded Deposit Account), which security

14

interest is perfected by Control by virtue of execution and delivery of a Deposit Account Control Agreement in favor of the Term Loan Agent (as collateral agent and bailee for the SOA Collateral Agent pursuant to the Term Intercreditor Agreement) or the SOA Collateral Agent with respect to each such Deposit Account.  No Grantor shall hereafter establish or maintain any Deposit Account (other than an Excluded Deposit Account) unless such account is with Bank of America N.A. (or an affiliate thereof) or another depositary institution reasonably acceptable to SOA Collateral Agent, and contemporaneously with (i) the establishment thereof or (ii) in the case of any Deposit Account which ceases to qualify as an Excluded Deposit Account in accordance with the definition of "Excluded Deposit Account", promptly after such time that such Deposit Account ceases to be an Excluded Deposit Account, such Grantor enters into a Deposit Account Control Agreement in favor of the Term Loan Agent (as collateral agent and bailee for the SOA Collateral Agent pursuant to the Term Intercreditor Agreement) or SOA Collateral Agent with respect to such Deposit Account. The Grantors shall not grant or purport to grant Control of any Deposit Account (excluding Excluded Deposit Accounts or any Deposit Account that constitutes Excluded Property) to any person other than the Term Loan Agent (as collateral agent and bailee for the SOA Collateral Agent pursuant to the Term Intercreditor Agreement) or SOA Collateral Agent and in each case, in accordance with the provisions of the Term Intercreditor Agreement.

(c)      Electronic Chattel Paper and Transferable Records.  As of the date hereof, no amount under or in connection with any of the Pledged Collateral is evidenced by any Electronic Chattel Paper or any "transferable record" (as that term is defined in *Section 201* of the Federal Electronic Signatures in Global and National Commerce Act, or in *Section 16* of the Uniform Electronic Transactions Act as in effect in any relevant jurisdiction) other than such Electronic Chattel Paper and transferable records listed in *Schedule 8* to the Perfection Certificate.  Subject to the Intercreditor Agreements, if at any time any amount payable under or in connection with any of the Pledged Collateral shall be evidenced by any Electronic Chattel Paper or any transferable record, when acquiring such Electronic Chattel Paper or transferable record the Grantors shall promptly notify the SOA Collateral Agent thereof and shall take such action as the SOA Collateral Agent may reasonably request to vest in the SOA Collateral Agent control of such Electronic Chattel Paper under *Section 9-105* of the UCC or control under *Section 201* of the Federal Electronic Signatures in Global and National Commerce Act or, as the case may be, *Section 16* of the Uniform Electronic Transactions Act, as so in effect in such jurisdiction, of such transferable record.  The requirement in the preceding sentence shall not apply to the extent that such amount, together with all amounts payable evidenced by Electronic Chattel Paper or any transferable record in which the SOA Collateral Agent has not been vested control within the meaning of the statutes described in the immediately preceding sentence, does not exceed $500,000 in the aggregate for all Grantors.  Subject to the Intercreditor Agreements, the SOA Collateral Agent agrees with the Grantors that the SOA Collateral Agent will arrange, pursuant to procedures reasonably satisfactory to the SOA Collateral Agent and so long as such procedures will not result in the SOA Collateral Agent's loss of control, for the Grantors to make alterations to the Electronic Chattel Paper or transferable record permitted under *Section 9-105* of the UCC or, as the case may be, *Section 201* of the Federal Electronic Signatures in Global and National Commerce Act or *Section 16* of the Uniform Electronic Transactions Act for a party in control to allow without loss of control, unless an Event of Default has occurred and is continuing or would occur after taking into account any action by the Grantors with respect to such Electronic Chattel Paper or transferable record.

(d)    Letter-of-Credit Rights.    Subject to the Intercreditor Agreements, if any Grantor is at any time a beneficiary under a Letter of Credit that is Pledged Collateral now or hereafter issued, the Grantors shall promptly notify the SOA Collateral Agent thereof and the Grantors shall, at the reasonable request of the SOA Collateral Agent, pursuant to an agreement in form and substance reasonably satisfactory to the SOA Collateral Agent, either (i) arrange for the issuer and any confirmer of such Letter of Credit to consent to an assignment to the SOA Collateral Agent of the proceeds of any drawing under the Letter of Credit or (ii) arrange for the SOA Collateral Agent to become the transferee beneficiary of such Letter of Credit, with the SOA Collateral Agent agreeing, in each case, that the proceeds of any drawing under the Letter of Credit are to be applied as provided in the Term Intercreditor Agreement.  The actions in the preceding sentence shall not be required to the extent that the amount of any such Letter of Credit, together with the aggregate amount of all other Letters of Credit for which the actions described above in clauses (i) and (ii) have not been taken, does not exceed $5,000,000 in the aggregate for all Grantors.

(e)    Pledged Equity Interests.

(i)    Pledged Equity Interests.    Each Grantor will cause the Pledged Equity Interests constituting part of the Pledged Collateral to constitute at all times 100% of the total number of Equity Interests of each Issuer then outstanding directly owned by such Grantor (other than Equity Interests that constitute Excluded Property).

(ii)    Delivery and Other Perfection.    Each Grantor, and without limiting its obligations under Section 3.4, shall, subject to the Intercreditor Agreements: (A) if any of the Pledged Equity Interests constituting part of the Pledged Collateral are received by such Grantor, forthwith (i) deliver to the Term Loan Agent (as collateral agent and bailee for the SOA Collateral Agent pursuant to the Term Intercreditor Agreement) the certificates or instruments representing or evidencing the same (if any), duly endorsed in blank or accompanied by such instruments of assignment and transfer in such form and substance as the Term Loan Agent (as collateral agent and bailee for the SOA Collateral Agent pursuant to the Term Intercreditor Agreement) may reasonably request, all of which thereafter shall be held by the Term Loan Agent (as collateral agent and bailee for the SOA Collateral Agent pursuant to the Term Intercreditor Agreement), pursuant to the terms of this Agreement, as part of the Pledged Equity Interests and (ii) take such other action as the Term Loan Agent (in each case as collateral agent and bailee for SOA Collateral Agent pursuant to the Term Intercreditor Agreement) may reasonably deem necessary or appropriate to duly record or otherwise perfect the security interest created hereunder in such Pledged Collateral (and each Grantor agrees that the SOA Collateral Agent may from time to time attach as *Schedule 7* of the Perfection Certificate an updated list of the Pledged Equity Interests reflecting the addition of such Pledged Equity Interests); (B) promptly from time to time enter into such control agreements, each in form and substance reasonably acceptable to the Term Loan Agent (as collateral agent and bailee for the SOA Collateral Agent pursuant to the Term Intercreditor Agreement), as may be required to perfect the security interest created hereby in the Pledged Equity Interests, and will promptly furnish to the Term Loan Agent (in each case as collateral agent and bailee for the SOA Collateral Agent pursuant to the Term Intercreditor Agreement) executed copies thereof; (C) to the extent that any Pledged Equity Interests

16

are represented by Certificated Securities, keep full and accurate books and records relating to the Pledged Collateral, and stamp or otherwise mark such books and records in such manner as the Term Loan Agent may reasonably require in order to reflect the security interests granted by this Agreement; and (D) comply with the obligations set forth in *Section 10.08* of the Supply and Offtake Agreement, as if it were set forth herein *mutatis mutandis*.

    (iii)    <u>Voting Rights; Dividends</u>.

    (A)    <u>Voting Rights</u>.  So long as no Event of Default shall have occurred and be continuing, each Grantor shall have the right to exercise all voting, consensual and other powers of ownership pertaining to the Pledged Equity Interests for any purpose permitted by the terms of this Agreement and the PESRM Transaction Documents; provided that no such vote shall be cast or such power exercised, and no consent, waiver or ratification shall be given by such Grantor, if in any such case the effect thereof would be to materially impair any of the Pledged Equity Interests or would be in violation of any of the provisions of this Agreement or any of the other PESRM Transaction Documents.  Subject to the Intercreditor Agreements, the Term Loan Agent (as collateral agent and bailee for the SOA Collateral Agent pursuant to the Term Intercreditor Agreement) shall execute and deliver to each Grantor or cause to be executed and delivered to such Grantor all such proxies, powers of attorney, dividend and other orders, and all such instruments, without recourse, as such Grantor may reasonably request for the purpose of enabling such Grantor to exercise the rights and powers that it is entitled to exercise pursuant to this Section.

    (B)    <u>Dividends, Etc</u>.  Unless and until an Event of Default shall have occurred and be continuing, each Grantor shall be entitled to receive and retain any dividends, distributions or proceeds in respect of the Pledged Equity Interests. If an Event of Default shall have occurred and be continuing, whether or not the SOA Collateral Agent exercises any available right, subject to the Intercreditor Agreements, to declare any Secured Obligations due and payable or seek or pursue any other relief or remedy available to them under Applicable Law or under this Agreement, the PESRM Transaction Documents or any other agreement relating to any such Secured Obligation, upon request of the Term Loan Agent (as collateral agent and bailee for the SOA Collateral Agent pursuant to the Term Intercreditor Agreement), all dividends and distributions on the Pledged Equity Interests shall be paid directly to the Term Loan Agent (as collateral agent and bailee for the SOA Collateral Agent pursuant to the Term Intercreditor Agreement) and retained by it as part of the Pledged Collateral, subject to the terms of the Term Intercreditor Agreement, and, if the Term Loan Agent shall so request in writing, each Grantor agrees to execute and deliver to the Term Loan Agent (as collateral agent and bailee for the SOA Collateral Agent pursuant to the Term Intercreditor Agreement) appropriate additional dividend, distribution and other orders and documents to that end; <u>provided</u> that if such Event of Default is cured, any such dividend or distribution theretofore paid to the Term Loan Agent shall, upon request of such Grantor (except to the extent

theretofore applied to the Term Loan Secured Obligations or the Secured Obligations in accordance with the Intercreditor Agreements) be returned by the Term Loan Agent to such Grantor.

SECTION 3.3 <u>Joinder of Additional Grantors</u>.  The Grantors shall cause each of their Subsidiaries (other than an Excluded Subsidiary or a Foreign Subsidiary) that, from time to time after the date hereof, shall be required to pledge any assets to the SOA Collateral Agent for the benefit of the Supply and Offtake Secured Parties pursuant to the provisions of the Supply and Offtake Agreement and to the extent required thereby, to execute and deliver to the SOA Collateral Agent (a) a Joinder Agreement substantially in the form of <u>Exhibit 1</u> and (b) a Perfection Certificate, in each case, within thirty (30) days of the date on which such Subsidiary was acquired or created, and upon such execution and delivery, such Subsidiary shall constitute a "**Grantor**" for all purposes hereunder with the same force and effect as if originally named as a Grantor herein.  The execution and delivery of such Joinder Agreement shall not require the consent of the Grantors hereunder.  The rights and obligations of the Grantors hereunder shall remain in full force and effect notwithstanding the addition of any new Grantor as a party to this Agreement.

SECTION 3.4 <u>Supplements; Further Assurances</u>.  The Grantors shall take such further actions, and execute and/or deliver to the SOA Collateral Agent such additional financing statements, amendments, assignments, agreements, supplements, powers and instruments, as the SOA Collateral Agent may in its reasonable judgment deem necessary or appropriate in order to create, perfect, preserve and protect the Lien on the Pledged Collateral as provided herein and the rights and interests granted to the SOA Collateral Agent hereunder, to carry into effect the purposes hereof or better to assure and confirm the validity, enforceability and priority of the SOA Collateral Agent's Lien on the Pledged Collateral or, subject to the Intercreditor Agreements, permit the SOA Collateral Agent to exercise and enforce its rights, powers and remedies hereunder with respect to any Pledged Collateral, including the filing of financing statements, continuation statements and other documents (including this Agreement) under the Uniform Commercial Code (or other similar laws) in effect in any jurisdiction with respect to the security interest created hereby and the execution and delivery of Deposit Account Control Agreements, all in form reasonably satisfactory to the SOA Collateral Agent and in such offices wherever required by law to perfect, continue and maintain the validity, enforceability and priority of the Lien on the Pledged Collateral as provided herein and to preserve the other rights and interests granted to the SOA Collateral Agent hereunder, as against third parties, with respect to the Pledged Collateral. Without limiting the generality of the foregoing, the Grantors (i) shall make, execute, endorse, acknowledge, file or refile and/or deliver to the SOA Collateral Agent from time to time upon reasonable request by the SOA Collateral Agent such lists, schedules, descriptions and designations of the Pledged Collateral, copies of warehouse receipts, receipts in the nature of warehouse receipts, bills of lading, documents of title, vouchers, invoices, schedules, confirmatory assignments, supplements, additional security agreements, conveyances, financing statements, transfer endorsements, powers of attorney, certificates, reports and other assurances or instruments as the SOA Collateral Agent shall reasonably request and (ii) in the event that all Term Loan Secured Obligations have been paid in full and the Term Loan Credit Agreement shall have terminated in accordance with its terms, enter into (a) any amendments to this Agreement or any document executed in connection herewith (including any UCC financing statements or other filings in any jurisdiction) as the SOA Collateral Agent shall reasonably

18

request to reflect such events and (b) new Deposit Account Control Agreements with the SOA Collateral Agent in form and substance reasonably satisfactory to the SOA Collateral Agent. Subject to the Intercreditor Agreements, if an Event of Default has occurred and is continuing, the SOA Collateral Agent may institute and maintain, in its own name or in the name of the Grantors, such suits and proceedings as the SOA Collateral Agent may be advised by counsel as being necessary, desirable or expedient to prevent any impairment of the Lien on or the perfection thereof in the Pledged Collateral.  All of the foregoing shall be at the sole cost and expense of the Grantors.

## ARTICLE IV.

## REPRESENTATIONS, WARRANTIES AND COVENANTS

Each Grantor represents, warrants and covenants to the Supply and Offtake Secured Parties, as of the date of this Agreement and as of each Day of the Term on which there is any outstanding transaction pursuant to any PESRM Transaction Document, as follows:

SECTION 4.1 Title.  Except for the Lien granted to the SOA Collateral Agent for the benefit of the Supply and Offtake Secured Parties pursuant to this Agreement and Permitted Liens, each Grantor owns and has rights and, as to Pledged Collateral acquired by it from time to time after the date hereof, will own and have rights in each item of Pledged Collateral pledged by it hereunder, free and clear of any and all Liens or claims.  For the avoidance of doubt, it is understood and agreed that any Grantor may, as part of its business, grant licenses to third parties to use Intellectual Property owned or developed by a Grantor.  For purposes of this Agreement and the other PESRM Transaction Documents, such licensing activity shall not constitute a "Lien" on such Intellectual Property.  The SOA Collateral Agent understands that any such licenses may be exclusive to the applicable licensees, and such exclusivity provisions may limit the ability of the SOA Collateral Agent to utilize, sell, lease or transfer the related Intellectual Property or otherwise realize value from such Intellectual Property pursuant hereto.

SECTION 4.2 Validity and Priority of Security Interest.  The Lien on the Pledged Collateral granted to the SOA Collateral Agent for the benefit of the Supply and Offtake Secured Parties hereunder constitutes and will at all times constitute a legal and valid Lien on all the Pledged Collateral, securing the payment and performance of the Secured Obligations, which (a) in the case of Pledged Collateral in which a lien can be perfected by such filings and other actions that are required pursuant to Section 2.2, subject to the filings and other actions described in *Schedule 4* to the Perfection Certificate (to the extent required to be listed in the Schedules to the Perfection Certificate as of the date this representation is made or deemed made), is perfected, and (b) is first priority, subject only to Permitted Liens.

SECTION 4.3 Defense of Claims; Transferability of Pledged Collateral.  Subject to *Section 10.05* of the Supply and Offtake Agreement, the Grantors shall, at their own cost and expense, defend title to the Pledged Collateral pledged by it hereunder and the security interest therein and Lien thereon granted to the SOA Collateral Agent and the priority thereof against all claims and demands of all persons, at its own cost and expense, at any time claiming any interest therein adverse to the SOA Collateral Agent other than Permitted Liens.

19

SECTION 4.4 <u>Other Financing Statements</u>.   It has not filed, and has not authorized any third party to file, any valid or effective financing statement (or similar statement, instrument of registration or public notice under the law of any jurisdiction) covering or purporting to cover any interest of any kind in the Pledged Collateral, except such as have been filed in favor of the SOA Collateral Agent pursuant to this Agreement or in favor of any holder of a Permitted Lien with respect to such Permitted Lien or financing statements or public notices relating to the termination statements listed in *Schedule 10* to the Perfection Certificate.   The Grantors shall not execute, authorize or permit to be filed in any public office any financing statement (or similar statement, instrument of registration or public notice under the law of any jurisdiction) relating to any Pledged Collateral, except financing statements and other statements and instruments filed or to be filed in respect of and covering the security interests granted by the Grantors to the holder of the Permitted Liens.

SECTION 4.5 <u>Chief Executive Office; Change of Name; Jurisdiction of Organization</u>.

(a)     Such Grantor will not, except upon fifteen (15) days' (or such later time as agreed to by the SOA Collateral Agent) prior written notice to the SOA Collateral Agent and delivery to the SOA Collateral Agent of all additional duly authorized and, where required, executed financing statements and other documents reasonably requested by the SOA Collateral Agent to maintain the validity, perfection and priority of the security interests provided for herein, (i) change its jurisdiction of organization or the location of its chief executive office or principal place of business from that referred to in *Schedule 1(a)* or *2(a),* as applicable, to the Perfection Certificate or (ii) change its name or type of organization.

(b)     The SOA Collateral Agent may rely on advice of counsel as to whether any or all UCC financing statements of the Grantors need to be amended as a result of any of the changes described in clause (a) above.   If the Grantors fail to provide information to the SOA Collateral Agent about such changes on a timely basis, the SOA Collateral Agent shall not be liable or responsible to any party for any failure to maintain a perfected Lien on the Grantors' property constituting Pledged Collateral, for which the SOA Collateral Agent needed to have information relating to such changes.   The SOA Collateral Agent shall have no duty to inquire about such changes if the Grantors do not inform the SOA Collateral Agent of such changes, and the parties acknowledge and agree that it would not be feasible or practical for the SOA Collateral Agent to search for information on such changes if such information is not provided by the Grantors.

SECTION 4.6 <u>Location of Inventory and Equipment</u>.   On the date hereof, the Inventory and Equipment (other than mobile goods) are kept at the locations listed in the relevant schedules to the Perfection Certificate.   The Grantors shall not move any Inventory that is Crude Oil or Refined Product that the ICBCS SOA Secured Party holds title to or which is held by PESRM and is subject to a Lien of the SOA Collateral Agent, on behalf of the Supply and Offtake Secured Parties, to any location not owned by the Grantors, other than any location that is listed in the relevant schedules to the Perfection Certificate, any location for which a Third Party Consent Agreement has been entered into or any other location not required to be subject to a Third Party Consent Agreement in accordance with Section 10.17 of the Supply and Offtake Agreement, which locations shall be deemed to be added to the schedules to the Perfection

Certificate, unless they have given the SOA Collateral Agent not less than ten (10) days' prior written notice (or such shorter period of time as may be permitted by the SOA Collateral Agent in its sole discretion) of its intention so to do, clearly describing such new location and providing such other information in connection therewith as the SOA Collateral Agent may reasonably request; provided, however, that in no event shall any Inventory be moved to any location outside of the continental United States.

SECTION 4.7 <u>Consents, etc.</u>  In the event that the SOA Collateral Agent desires to exercise any remedies, voting or consensual rights or attorney-in-fact powers set forth in this Agreement and determines it necessary to obtain any approvals or consents of any Governmental Authority or any other person therefor, then, upon the reasonable request of the SOA Collateral Agent, the Grantors shall use commercially reasonable efforts to assist and aid the SOA Collateral Agent to obtain as soon as practicable any necessary approvals or consents for the exercise of any such remedies, rights and powers.

SECTION 4.8 <u>Pledged Collateral</u>.  All information set forth herein, including the schedules hereto, and all information contained in any documents, schedules and lists heretofore delivered to any Supply and Offtake Secured Party, including the Perfection Certificate and the schedules thereto, in connection with this Agreement, in each case, relating to the Pledged Collateral, is accurate and complete in all material respects for the purposes for which it was delivered.  The Pledged Collateral described on the Schedules to the Perfection Certificate constitutes all of the property of such type of Pledged Collateral required to be so scheduled and owned or held by the Grantors.

SECTION 4.9 <u>Insurance</u>.  In the event that the proceeds of any insurance claim are paid to the Grantors after the SOA Collateral Agent has exercised its right to foreclose after an Event of Default has occurred and is continuing, such Net Cash Proceeds shall be held in trust for the benefit of the SOA Collateral Agent and immediately after receipt thereof shall be paid to the Term Loan Agent (as collateral agent and bailee for the SOA Collateral Agent in accordance with the Term Intercreditor Agreement) or the SOA Collateral Agent for application in accordance with the terms of the Intercreditor Agreements and <u>Section 8.1</u> of this Agreement, as applicable.

SECTION 4.10        <u>Trademarks</u>.

(a)      *Schedule 9(a)* to the Perfection Certificate lists all Trademark applications and registrations owned by each Grantor in its own name on the date hereof.  On the date hereof, to each such Grantor's knowledge, all material Trademarks are valid, subsisting, unexpired and enforceable, have not been abandoned and do not infringe in any material respect the intellectual property rights of any other Person.

(b)      Except as set forth in *Schedule 9(b)* to the Perfection Certificate, on the date hereof, none of the Trademarks are the subject of any licensing or franchise agreement pursuant to which such Grantor is the licensor or franchisor.

21

(c)     No holding, decision or judgment has been rendered by any Governmental Authority which would limit, cancel or question the validity of, or such Grantor's rights in, any Trademark in any respect that could reasonably be expected to have a Material Adverse Effect.

(d)     No action or proceeding is pending, or, to the knowledge of such Grantor, threatened in writing, on the date hereof (i) seeking to limit, cancel or question the validity of any Trademark or such Grantor's ownership interest therein, or (ii) which, if adversely determined, would have an adverse effect on the value of any Trademark, except in each case as could not reasonably be expected to have a Material Adverse Effect.

(e)     Such Grantor (either itself or through licensees) will (i) continue to use each material Trademark in a manner consistent with the use thereof as of the date of this Agreement, except for any change in such manner in the ordinary course of business, (ii) maintain the quality of products and services offered under such Trademark in a manner consistent with such quality as of the date of this Agreement, and (iii) use such Trademark with notices of registration and other notices and legends in a manner consistent with such use as of the date of this Agreement except in each case of the foregoing (i) through (iii) as could not reasonably be expected to have a Material Adverse Effect.

(f)     Such Grantor will notify the SOA Collateral Agent if it knows, or has reason to know, that any application or registration relating to any material Trademark may become forfeited, abandoned or dedicated to the public, or of any adverse determination or development (including any such determination or development in any proceeding in the United States Patent and Trademark Office) regarding such Grantor's ownership of, or right to register or use such Trademark.

(g)     Whenever such Grantor, either by itself or through any agent, employee, licensee or designee, shall file an application for the registration of any Trademark with the United States Patent and Trademark Office, such Grantor shall report such filing to the SOA Collateral Agent within ten (10) Business Days after the last day of the fiscal quarter in which such filing occurs.  Subject to the Intercreditor Agreements, upon the request of the SOA Collateral Agent, such Grantor shall execute and deliver, and have recorded, any and all agreements, instruments and documents as the SOA Collateral Agent may request to evidence and perfect the SOA Collateral Agent's security interest in such Trademark.

(h)     In the event that any material Trademark is infringed, misappropriated or diluted by a third party, such Grantor shall take such actions as such Grantor shall reasonably deem appropriate under the circumstances to protect such Trademark.

SECTION 4.11     Pledged Equity Interests.  As of the date hereof, *Schedule 7* to the Perfection Certificate correctly sets forth the name and jurisdiction of each Issuer of, and the ownership interest (including class of Equity Interests (if applicable), certificate number (if applicable), number of shares or units and percentage owned) of each Grantor in, the Pledged Equity Interests.  As of the date hereof, the Pledged Equity Interests with respect to each Grantor constitute 100% of the issued and outstanding Equity Interests of each Subsidiary of such Grantor that are required to be pledged pursuant to this Agreement and are directly owned by such Grantor on the date hereof.  As of the date hereof, each Grantor hereby represents and

22

warrants that none of the limited liability company interests or limited partnership interests of any Subsidiary in which a security interest is granted by such Grantor hereunder are or represent interests in Issuers that (a) are registered investment companies, (b) are dealt in or traded on securities exchanges or markets or (c) are issued by an Issuer that has opted to have them treated as securities under the Uniform Commercial Code of any jurisdiction. The Pledged Equity Interests listed in *Schedule 7* to the Perfection Certificate are, and all other Pledged Equity Interests in which such Grantor shall hereafter grant a security interest pursuant to <u>Section 2.1</u> will be, (i) duly authorized, validly existing, fully paid and non-assessable (in the case of any shares issued by a corporation) and (ii) duly issued and outstanding (in the case of any equity interest in any other entity), and none of such Pledged Equity Interests are or will be subject to any contractual restriction, or any restriction under the charter, by-laws, or other organizational instrument of the respective Issuer, of any nature that might prohibit, impair, delay or otherwise affect the pledge of such Pledged Collateral hereunder, the sale or disposition thereof pursuant hereto or the exercise by the SOA Collateral Agent of rights and remedies hereunder (except for any such restriction contained herein, in any Intercreditor Agreement, or in the Supply and Offtake Agreement or permitted thereunder).

SECTION 4.12    <u>Third Party Consent Agreements</u>.  As of the date hereof, *Schedule 2(d)* to the Perfection Certificate correctly sets forth all locations of Required Infrastructure where Crude Oil or Refined Product of any Grantor are stored or transported and the owner of such Required Infrastructure has, on or prior to the date hereof, solely to the extent required pursuant to the Supply and Offtake Agreement, entered into a Third Party Consent Agreement with the SOA Collateral Agent.  If, after the date hereof, (a) PESRM enters into an agreement for Required Infrastructure, (b) such Required Infrastructure is not already subject to a Third Party Consent Agreement, and (c) the ICBCS SOA Secured Party intends to store or transport any ICBCS Hydrocarbons in or through such Required Infrastructure, then, with respect to such Required Infrastructure (other than, with the exception of infrastructure covered by that certain Third Party Consent Agreement with Sunoco Pipeline L.P., in respect of any vessels, barges, railcars, railroads or pipelines), (i) if the owner of such Required Infrastructure (such owner, the "**Applicable Owner**") is not an Affiliate of PESRM, PESRM shall use commercially reasonable efforts to, and (ii) if the Applicable Owner is an Affiliate of PESRM (other than a Grantor), PESRM shall, in each case, obtain and deliver to the SOA Collateral Agent a Third Party Consent Agreement executed by any applicable Grantor and the Applicable Owner, contemporaneously with the execution of any agreement in respect of the storage, terminaling and/or transport of such ICBCS Liquids between such Grantor and the Applicable Owner; <u>provided</u>, that where the Applicable Owner refuses to sign a Third Party Consent Agreement, no ICBCS Liquids will be stored in the corresponding infrastructure unless and until such time as a Third Party Consent Agreement is executed by the Applicable Owner or a suitable alternative arrangement is agreed by the ICBCS SOA Secured Party and PESRM and is effective.

## ARTICLE V.

## [RESERVED]

## ARTICLE VI.

## CERTAIN PROVISIONS CONCERNING RECEIVABLES

SECTION 6.1 <u>Maintenance of Records</u>.  The Grantors shall keep and maintain at their own cost and expense complete records of each Receivable, in a manner consistent with prudent business practice, including records of all payments received, all credits granted thereon, all merchandise or inventory returned and all other documentation relating thereto.  Subject to the Intercreditor Agreements, the Grantors shall, at the Grantors' sole cost and expense, upon the SOA Collateral Agent's demand made at any time after the occurrence and during the continuance of any Event of Default, deliver all tangible evidence of Receivables, including all documents evidencing Receivables and any books and records relating thereto to the SOA Collateral Agent or to its representatives (copies of which evidence and books and records may be retained by the Grantors).  Subject to the Intercreditor Agreements, upon the occurrence and during the continuance of any Event of Default, the SOA Collateral Agent may transfer a full and complete copy of the Grantors' books, records, credit information, reports, memoranda and all other writings relating to the Receivables to and for the use by any person that has acquired or is contemplating acquisition of an interest in the Receivables or the SOA Collateral Agent's security interest therein without the consent of any Grantor.

SECTION 6.2 <u>Modification of Terms, etc</u>.  The Grantors shall not rescind or cancel any obligations evidenced by any Receivable or modify any term thereof or make any adjustment with respect thereto except in the ordinary course of business consistent with prudent business practice, or extend or renew any such obligations except in the ordinary course of business consistent with prudent business practice or compromise or settle any dispute, claim, suit or legal proceeding relating thereto or sell any Receivable or interest therein except in the ordinary course of business consistent with prudent business practice, in each case, without the prior written consent of the SOA Collateral Agent.

SECTION 6.3 <u>Collection</u>.  The Grantors shall cause to be collected from the Account Debtor of each of the Receivables, as and when due in the ordinary course of business and consistent with prudent business practice (including Receivables that are delinquent, such Receivables to be collected in accordance with generally accepted commercial collection procedures), any and all amounts owing under or on account of such Receivable, and apply promptly upon receipt thereof all such amounts as are so collected to the outstanding balance of such Receivable, except that the Grantors may, with respect to a Receivable, allow in the ordinary course of business (i) a refund or credit due as a result of returned or damaged or defective merchandise and (ii) such extensions of time to pay amounts due in respect of Receivables and such other modifications of payment terms or settlements in respect of Receivables as shall be commercially reasonable in the circumstances, all in accordance with the Grantors' ordinary course of business consistent with its collection practices as in effect from time to time.  The costs and expenses (including attorneys' fees and disbursements) of collection,

24

in any case, whether incurred by the Grantors, the SOA Collateral Agent, any agent thereof or any other Supply and Offtake Secured Party, shall be paid by the Grantors.

## ARTICLE VII.

## TRANSFERS; RENEWABLE FUEL STANDARDS

SECTION 7.1 <u>Transfers of Pledged Collateral</u>.  The Grantors may sell, convey, assign or otherwise dispose of, or grant any option with respect to any of the Pledged Collateral pledged by it hereunder except to the extent expressly prohibited by the Supply and Offtake Documents.

SECTION 7.2 <u>Compliance with Renewable Fuel Standards</u>.  Unless otherwise agreed to in writing by the SOA Collateral Agent, nothing in the Supply and Offtake Agreement or any of the PESRM Transaction Documents shall be interpreted to impart any responsibility to the SOA Collateral Agent to comply with Renewable Fuel Standards (including requirements therein for RVOs and RINs) as an "obligated party" pursuant to 40 C.F.R. Part 80, as amended from time to time, by virtue of the transactions contemplated by this Agreement and the Supply and Offtake Agreement.  Notwithstanding any other terms or provisions of the Supply and Offtake Agreement, in all transactions under the Supply and Offtake Agreement, PESRM shall be deemed to have been the "obligated party" as set forth in *Section 4.13* thereof and shall have maintained, in all material respects, compliance with the obligations under the Renewable Fuel Standards (including requirements therein for RVOs and RINs) and remains solely responsible for the present and future validity of any RINs required thereunder and any and all associated costs attendant thereto. PESRM shall provide copies to the SOA Collateral Agent of required reporting with respect to PESRM's RINs transactions at the same time such reporting is made to the EPA through the annual and semi-annual compliance reports submitted through EMTS.

## ARTICLE VIII.

## REMEDIES

SECTION 8.1 <u>Remedies in respect of the Pledged Collateral</u>.  Upon the occurrence and during the continuance of any Event of Default, the SOA Collateral Agent may from time to time, subject to the Intercreditor Agreements, exercise in respect of the Pledged Collateral, in addition to the other rights and remedies provided for herein or otherwise available to it, the following remedies:

(a)     Personally, or by agents or attorneys, immediately take possession of such Pledged Collateral or any part thereof, from the Grantors or any other person who then has possession of any part thereof with or without notice or process of law, and for that purpose, may enter upon the Grantors' premises where any of such Pledged Collateral is located, remove such Pledged Collateral, remain present at such premises to receive copies of all communications and remittances relating to such Pledged Collateral and use such communications and remittances and any and all services, supplies, aids and other facilities of the Grantors in connection with such removal and possession;

(b)     Demand, sue for, collect or receive any money or property at any time payable or receivable in respect of such Pledged Collateral including instructing the obligor or obligors on any agreement, instrument or other obligation constituting part of such Pledged Collateral to make any payment required by the terms of such agreement, instrument or other obligation directly to the SOA Collateral Agent, and in connection with any of the foregoing, compromise, settle, extend the time for payment and make other modifications with respect thereto; _provided_ that, in the event that any such payments are made directly to the Grantors, prior to receipt by any such obligor of such instruction, the Grantors shall segregate all amounts received pursuant thereto in trust for the benefit of the SOA Collateral Agent and shall promptly (but in no event later than one (1) Business Day after receipt thereof) pay such amounts to the SOA Collateral Agent;

(c)     Sell, assign, grant a license to use or otherwise liquidate, or direct the Grantors to sell, assign, grant a license to use or otherwise liquidate, any and all investments made in whole or in part with such Pledged Collateral or any part thereof, and take possession of the proceeds of any such sale, assignment, license or liquidation;

(d)     Take possession of such Pledged Collateral or any part thereof, by directing the Grantors in writing to deliver the same to the SOA Collateral Agent at any place or places so designated by the SOA Collateral Agent, in which event the Grantors shall at their own expense: (a) forthwith cause the same to be moved to the place or places designated by the SOA Collateral Agent and therewith delivered to the SOA Collateral Agent, (b) store and keep any such Pledged Collateral so delivered to the SOA Collateral Agent at such place or places pending further action by the SOA Collateral Agent and (c) while such Pledged Collateral shall be so stored and kept, provide such security and maintenance services as shall be necessary to protect the same and to preserve and maintain them in good condition.  The Grantors' obligation to deliver such Pledged Collateral as contemplated in this Section 8.1(d) is of the essence hereof. Upon application to a court of equity having jurisdiction, the SOA Collateral Agent shall be entitled to a decree requiring specific performance by the Grantors of such an obligation;

(e)     Withdraw all moneys, instruments, securities and other property in any bank, financial securities, deposit or other account of the Grantors constituting Pledged Collateral for application to the Secured Obligations as provided in this Article VIII;

(f)     Exercise any and all rights as beneficial and legal owner of the Pledged Collateral, including perfecting assignment of and exercising any and all other rights and powers with respect to any Pledged Collateral;

(g)     Exercise all the rights and remedies of a secured party on default under the UCC, and the SOA Collateral Agent may also in its sole discretion, without notice except as specified in Section 8.2, sell, assign or grant a license to use such Pledged Collateral or any part thereof in one or more parcels at public or private sale, at any exchange, broker's board or at any of the SOA Collateral Agent's offices or elsewhere, for cash, on credit or for future delivery, and at such price or prices and upon such other terms as the SOA Collateral Agent may deem commercially reasonable.  The SOA Collateral Agent or any other Supply and Offtake Secured Party or any of their respective Affiliates may be the purchaser, licensee, assignee or recipient of such Pledged Collateral or any part thereof at any such sale and the SOA Collateral Agent shall

26

be entitled, for the purpose of bidding and making settlement or payment of the purchase price for all or any portion of such Pledged Collateral sold, assigned or licensed at such sale, to use and apply any of the Secured Obligations owed to such person as a credit on account of the purchase price of such Pledged Collateral or any part thereof payable by such person at such sale.  Each purchaser, assignee, licensee or recipient at any such sale shall acquire the property sold, assigned or licensed absolutely free from any claim or right on the part of the Grantors, and the Grantors hereby waive, to the fullest extent permitted by law, all rights of redemption, stay and/or appraisal which it now has or may at any time in the future have under any rule of law or statute now existing or hereafter enacted.  The SOA Collateral Agent shall not be obligated to make any sale of such Pledged Collateral or any part thereof regardless of notice of sale having been given.  The SOA Collateral Agent may adjourn any public or private sale from time to time by announcement at the time and place fixed therefor, and such sale may, without further notice, be made at the time and place to which it was so adjourned.  The Grantors hereby waive, to the fullest extent permitted by law, any claims against the SOA Collateral Agent arising by reason of the fact that the price at which such Pledged Collateral or any part thereof may have been sold, assigned or licensed at such a private sale was less than the price which might have been obtained at a public sale, even if the SOA Collateral Agent accepts the first offer received and does not offer such Pledged Collateral to more than one offeree;

(h)     Require such Grantor to cause the Pledged Equity Interests to be transferred of record into the name of the SOA Collateral Agent or its nominee (and the SOA Collateral Agent agrees that if any of such Pledged Equity Interests are transferred into its name or the name of its nominee, the SOA Collateral Agent will thereafter promptly give to such Grantor copies of any notices and communications received by it with respect to the Pledged Equity Interests);

(i)     In its sole discretion, send to each bank, securities intermediary or issuer party to any Deposit Account Control Agreement a "Notice of Exclusive Control" as defined in and under such agreement or any other similar notice; and

(j)     Exercise all other rights and remedies with respect to the Receivables and the other Pledged Collateral, including those set forth in *Section 9-607* of the UCC.

The SOA Collateral Agent acknowledges that, in connection with any exercise of remedies pursuant to this Section 8.1, it is subject to all applicable Requirements of Law (including Environmental Laws).

SECTION 8.2 Notice of Sale.  Each Grantor acknowledges and agrees that, to the extent notice of sale or other disposition of the Pledged Collateral or any part thereof shall be required by law, ten (10) days' prior notice to the Grantors of the time and place of any public sale or of the time after which any private sale or other intended disposition is to take place shall be commercially reasonable notification of such matters.  No notification need be given to the Grantors if they have signed, after the occurrence and during the continuance of an Event of Default, a statement renouncing or modifying any right to notification of sale or other intended disposition.

SECTION 8.3 <u>Waiver of Notice and Claims</u>. Each of the Grantors hereby waives, to the fullest extent permitted by Applicable Law, notice or judicial hearing in connection with the SOA Collateral Agent's taking possession or the SOA Collateral Agent's disposition of the Pledged Collateral or any part thereof after the occurrence and during the continuance of an Event of Default, including any and all prior notice and hearing for any prejudgment remedy or remedies and any such right that such Grantor would otherwise have under law, and each of the Grantors hereby further waives, to the fullest extent permitted by Applicable Law, (i) all damages occasioned by such taking of possession, (ii) all other requirements as to the time, place and terms of sale or other requirements with respect to the enforcement of the SOA Collateral Agent's rights hereunder and (iii) all rights of redemption, appraisal, valuation, stay, extension or moratorium now or hereafter in force under any Applicable Law. The SOA Collateral Agent shall not be liable for any incorrect or improper payment made pursuant to this <u>Article VIII</u> in the absence of gross negligence or willful misconduct on the part of the SOA Collateral Agent. Any sale of, or the grant of options to purchase, or any other realization upon, any Pledged Collateral shall operate to divest all right, title, interest, claim and demand, either at law or in equity, of the Grantors therein and thereto, and shall be a perpetual bar both at law and in equity against the Grantors and against any and all persons claiming or attempting to claim the Pledged Collateral so sold, optioned or realized upon, or any part thereof, from, through or under the Grantors.

SECTION 8.4 <u>Certain Sales of Pledged Collateral</u>.

(a)    Each of the Grantors recognizes that, by reason of certain prohibitions contained in law, rules, regulations or orders of any Governmental Authority, the SOA Collateral Agent may be compelled, with respect to any sale of all or any part of the Pledged Collateral, to limit purchasers to those who meet the requirements of such Governmental Authority. Each of the Grantors acknowledges that any such sales may be at prices and on terms less favorable to the SOA Collateral Agent than those obtainable through a public sale without such restrictions, and, notwithstanding such circumstances, agrees that any such restricted sale shall be deemed to have been made in a commercially reasonable manner and that, except as may be required by Applicable Law, the SOA Collateral Agent shall have no obligation to engage in public sales.

(b)    Each of the Grantors further agrees that a breach of any of the covenants contained in this <u>Section 8.4</u> will cause irreparable injury to the SOA Collateral Agent and the other Supply and Offtake Secured Parties, that the SOA Collateral Agent and the other Supply and Offtake Secured Parties have no adequate remedy at law in respect of such breach and, as a consequence, that each and every covenant contained in this <u>Section 8.4</u> is specifically enforceable against the Grantors. Each of the Grantors agrees not to assert any defenses against an action for specific performance of such covenants, except for a defense that no Event of Default has occurred and is continuing, and any right to assert such other defenses is hereby waived by such Grantor. Each of the Grantors shall reimburse the Supply and Offtake Secured Parties upon demand for the costs and expenses (including reasonable attorneys' fees, transfer taxes and any other charges) incurred by the Supply and Offtake Secured Parties in connection with any sale, disposition, repair, replacement, alteration, addition, improvement or retention of any Pledged Collateral hereunder.

28

SECTION 8.5 <u>No Waiver; Cumulative Remedies</u>.

(a)     No failure on the part of the SOA Collateral Agent to exercise, no course of dealing with respect to, and no delay on the part of the SOA Collateral Agent in exercising, any right, power or remedy hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any such right, power, privilege or remedy hereunder preclude any other or further exercise thereof or the exercise of any other right, power, privilege or remedy; nor shall the SOA Collateral Agent be required to look first to, enforce or exhaust any other security, collateral or guaranties.  All rights and remedies herein provided are cumulative and are not exclusive of any rights or remedies provided by law or otherwise available.

(b)     In the event that the SOA Collateral Agent shall have instituted any proceeding to enforce any right, power, privilege or remedy under this Agreement or any other PESRM Transaction Document by foreclosure, sale, entry or otherwise, and such proceeding shall have been discontinued or abandoned for any reason or shall have been determined adversely to the SOA Collateral Agent, then and in every such case, the Grantors, the SOA Collateral Agent and each other Supply and Offtake Secured Party shall be restored to their respective former positions and rights hereunder with respect to the Pledged Collateral, and all rights, remedies, privileges and powers of the SOA Collateral Agent and the other Supply and Offtake Secured Parties shall continue as if no such proceeding had been instituted.

(c)     This Agreement and the Liens on the Pledged Collateral shall be automatically reinstated if and to the extent that for any reason any payment by or on behalf of the Grantors in respect of the Secured Obligations is rescinded or must be otherwise restored by any holder of any of the Secured Obligations, whether as a result of any proceedings in bankruptcy or reorganization or otherwise. Each of the Grantors agrees that it will indemnify the SOA Collateral Agent and the other Supply and Offtake Secured Parties, and their respective employees, directors, officers and agents on demand for all reasonable costs and expenses (including reasonable and documented fees, costs and expenses of counsel) incurred by the SOA Collateral Agent and the other Supply and Offtake Secured Parties or their respective employees, directors, officers and agents in connection with such reinstatement, rescission or restoration, including any such costs and expenses incurred in defending against any claim alleging that such payment constituted a preference, fraudulent transfer or similar payment under any bankruptcy, insolvency or similar law.

SECTION 8.6 <u>Deficiency</u>.   If the proceeds of, or other realization upon, the Pledged Collateral by virtue of the exercise of remedies under this <u>Article VIII</u> are insufficient to cover the costs and expenses of such exercise and the payment or satisfaction in full of the Secured Obligations, the Grantors shall remain liable for any deficiency.

SECTION 8.7 <u>Application of Proceeds</u>. Subject to the Intercreditor Agreements, the proceeds received by the SOA Collateral Agent in respect of any sale of, collection from, casualty event in respect of or other realization upon all or any part of the Pledged Collateral pursuant to the exercise by the SOA Collateral Agent of its remedies shall be applied, in full or in part, together with any other sums then held by the SOA Collateral Agent pursuant to this Agreement and the other Supply and Offtake Security Documents, promptly by the SOA Collateral Agent as follows:

(a)      *First*, to the payment of all indemnities, costs and expenses, fees, commissions and taxes of such sale, collection or other realization including compensation to the SOA Collateral Agent and its agents and counsel, and all expenses, liabilities and advances made or incurred by the SOA Collateral Agent in connection therewith and all amounts for which the SOA Collateral Agent is entitled to indemnification pursuant to the provisions of any PESRM Transaction Document, together with interest on each such amount at the highest rate then in effect under the Supply and Offtake Agreement from and after the date such amount is due, owing or unpaid until paid in full;

(b)      *Second*, to the payment of all other indemnities, costs and expenses;

(c)      *Third*, to the ratable payment in full in cash of all other Secured Obligations due to any Supply and Offtake Secured Party; and

(d)      *Fourth*, the balance, if any, to the person lawfully entitled thereto (including PESRM or its successors or assigns) or as a court of competent jurisdiction may direct.

In the event that any such proceeds are insufficient to pay in full the items described in clauses (a) through (d) above, PESRM shall remain liable for any deficiency.

## ARTICLE IX.

## [RESERVED]

## ARTICLE X.

## MISCELLANEOUS

SECTION 10.1          Concerning SOA Collateral Agent.

(a)      The SOA Collateral Agent has been appointed as collateral agent by the ICBCS SOA Secured Party, pursuant to the letter agreement, dated as of the Phase III Closing Date (the "Appointment Letter"), by and between the ICBCS SOA Secured Party and the SOA Collateral Agent.  The SOA Collateral Agent shall have the right hereunder to make demands, to give notices, to exercise or refrain from exercising any rights, and to take or refrain from taking action (including the release or substitution of the Pledged Collateral), in accordance with this Agreement. The SOA Collateral Agent may employ and/or appoint agents, sub-agents, bailees and attorneys-in-fact in its discretion in connection herewith, delegate any and all of its rights and powers hereunder to such Persons and shall not be liable for the negligence or misconduct of any such agents, sub-agents, bailees or attorneys-in-fact selected by it with reasonable care.  The SOA Collateral Agent may resign and a successor SOA Collateral Agent may be appointed in the manner provided in the Supply and Offtake Agreement and herein. In connection with any assignment by the ICBCS SOA Secured Party of its rights and obligations under the Supply and Offtake Agreement, the ICBCS SOA Secured Party shall cause the assignee to be appointed as a successor SOA Collateral Agent hereunder.  Upon the acceptance of such appointment by such successor SOA Collateral Agent (in accordance with this Agreement and a letter agreement substantially in the form of the Appointment Letter (or such other form acceptable to such

successor and assignee)), such successor SOA Collateral Agent shall thereupon succeed to and become vested with all the rights, powers, privileges and duties of the retiring SOA Collateral Agent under this Agreement, and the retiring SOA Collateral Agent shall thereupon be discharged from its duties and obligations under this Agreement.  After any retiring SOA Collateral Agent's resignation, the provisions hereof shall inure to its benefit as to any actions taken or omitted to be taken by it under this Agreement while it was the SOA Collateral Agent, and the successor SOA Collateral Agent shall be the "SOA Collateral Agent" for all purposes hereunder and under the Supply and Offtake Security Documents, the Supply and Offtake Agreement, the other PESRM Transaction Documents and the Intercreditor Agreements.

(b)     Notwithstanding any provision to the contrary elsewhere in this Agreement, the other Supply and Offtake Security Documents or the Supply and Offtake Agreement, (i) the SOA Collateral Agent shall not have any duties or responsibilities except those expressly set forth in this Agreement and the other Supply and Offtake Security Documents to which the SOA Collateral Agent is a party, (ii) the SOA Collateral Agent shall not have any fiduciary relationship with any other Supply and Offtake Secured Party, and (iii) no implied covenants, functions or responsibilities shall be read into this Agreement or any other Supply and Offtake Security Document, or otherwise exist against the SOA Collateral Agent. The SOA Collateral Agent shall not be liable for any action taken or omitted to be taken by it hereunder or under any other Supply and Offtake Security Document to which it is a party, or in connection herewith or therewith, or in connection with the Pledged Collateral, unless caused by its gross negligence or willful misconduct.

(c)     The SOA Collateral Agent, and its agents, sub-agents and bailees shall be deemed to have exercised reasonable care in the custody and preservation of the Pledged Collateral in its possession if such Pledged Collateral is accorded treatment substantially equivalent to that which they, in their individual capacity, accord their own respective property consisting of similar property, instruments or interests, it being understood that neither the SOA Collateral Agent nor any other Supply and Offtake Secured Party shall have responsibility for taking any necessary steps to preserve rights against any person with respect to any Pledged Collateral.

(d)     The SOA Collateral Agent, and its agents, sub-agents and bailees shall be entitled to rely upon any written notice, statement, certificate, order or other document or any telephone message believed by it to be genuine and correct and to have been signed, sent or made by the proper person, and, with respect to all matters pertaining to this Agreement and its duties hereunder, upon advice of counsel selected by it.

(e)     If any item of Pledged Collateral also constitutes collateral granted to the SOA Collateral Agent under any other deed of trust, mortgage, security agreement, pledge or instrument of any type, in the event of any conflict between the provisions hereof and the provisions of such other deed of trust, mortgage, security agreement, pledge or instrument of any type in respect of such collateral, the terms of this Agreement shall control (except with respect to any differing governing law, to the extent that the UCC or other Applicable Law mandates that such other governing law would control the perfection of such Pledged Collateral and the terms of such documentation).

(f)     The provisions of this Section 10.1 are solely for the benefit of the SOA Collateral Agent (and its agents, sub-agents and bailees), and neither PESRM nor any other Grantor shall have rights as a beneficiary of any of such provisions.  The Grantors shall pay all reasonable and documented out-of-pocket expenses incurred by the SOA Collateral Agent (and any of its appointed agents, subagents and bailees), including the reasonable and documented out-of-pocket fees, charges and disbursements of counsel for the SOA Collateral Agent and counsel for its agents, sub-agents and bailees, under this Section 10.1 or otherwise in connection with the enforcement or protection of its rights in connection with this Agreement and the other PESRM Transaction Documents, including all such reasonable and documented out-of-pocket expenses incurred during any workout, restructuring or negotiations in respect of the Secured Obligations.

(g)     The SOA Collateral Agent shall not be required to exercise any rights or remedies or take any action under this Agreement or any other Supply and Offtake Security Document to which it is a party or to give any consent under this Agreement or any other Supply and Offtake Security Document with respect to the Pledged Collateral, or enter into any agreement amending, modifying, supplementing or waiving any provision of this Agreement or any other Supply and Offtake Security Document unless it shall have been directed to do so in writing by the ICBCS SOA Secured Party; *provided*, that the SOA Collateral Agent shall have the right, but not the obligation, to enter into amendments to amend this Agreement or any other Supply and Offtake Security Document to which the SOA Collateral Agent is a party without having been so directed by the ICBCS SOA Secured Party solely for the purpose of preserving or protecting the Lien on and security interest in the Pledged Collateral.

(h)     Neither the SOA Collateral Agent nor its officers, directors, employees, agents, attorneys-in-fact, shareholders or affiliates shall (i) be liable for any action lawfully taken or omitted to be taken by it under or in connection with this Agreement or any other Supply and Offtake Security Document to which it is a party (except, in the case of the SOA Collateral Agent, for its gross negligence or willful misconduct) or (ii) be responsible in any manner to any other Supply and Offtake Secured Party for any recitals, statements, representations or warranties made by any Grantor contained herein or in any other PESRM Transaction Document, or in any certificate, report, statement or other document referred to or provided for in, or received by the SOA Collateral Agent under or in connection with this Agreement or any PESRM Transaction Document or for the value, validity, effectiveness, genuineness, enforceability or sufficiency of the Pledged Collateral.  The SOA Collateral Agent shall not be under any obligation to any other Supply and Offtake Secured Party to ascertain or to inquire as to the observance or performance of any of the agreements contained in, or conditions of, this Agreement, any other Supply and Offtake Security Document or any other PESRM Transaction Document or to inspect the properties, books or records of any Grantor.

(i)     The SOA Collateral Agent shall be fully justified in failing or refusing to take any action under this Agreement or any other Supply and Offtake Security Document to which it is a party (i) if such action would, in the reasonable opinion of the SOA Collateral Agent be contrary to law or the terms of this Agreement or any other Supply and Offtake Security Document to which it is a party, (ii) if such action is not specifically provided for in this Agreement or any other Supply and Offtake Security Document to which it is a party, and it shall not have received any such advice or concurrence of the ICBCS SOA Secured Party, or (iii) if, in

32

connection with the taking of any such action that would constitute an exercise of remedies under this Agreement or any other Supply and Offtake Security Document to which it is a party, it shall not first be indemnified to its satisfaction by each Supply and Offtake Secured Party against any and all liability and expense which may be incurred by it by reason of taking or continuing to take any such action.

(j)      The SOA Collateral Agent shall not be deemed to have actual, constructive, direct or indirect knowledge or notice of the occurrence of any "default" or Event of Default unless and until an authorized officer of the SOA Collateral Agent has received a written notice or a certificate from a Supply and Offtake Secured Party or PESRM stating that a "default" or Event of Default has occurred and describing such event.  The SOA Collateral Agent shall have no obligation whatsoever either prior to or after receiving such notice or certificate to inquire whether a "default" or Event of Default has in fact occurred and shall be entitled to rely conclusively, and shall be fully protected in so relying, on any such notice or certificate so furnished to it.

(k)      The SOA Collateral Agent shall not be required to (i) use its own funds in the performance of its obligations or duties, or in the exercise of any rights or powers, or (ii) take any action which, in its reasonable judgment, could involve an expense or liability unless furnished with security and indemnity which it deems in its reasonable discretion, to be satisfactory.

(l)      Each Grantor shall indemnify the SOA Collateral Agent (and any sub-agent) and each Related Party of the foregoing (each such person being called an "**Indemnitee**") against, and hold each Indemnitee harmless from, any and all losses, claims, damages, liabilities and reasonable out-of-pocket related expenses (including the reasonable out-of-pocket fees, charges and disbursements of one counsel for the Indemnitees, and if reasonably necessary, one local counsel to the Indemnitees in each relevant jurisdiction, and solely, in the case of conflicts of interest, appropriate counsel in each applicable material jurisdiction to the affected Indemnitee) incurred by any Indemnitee or asserted against any Indemnitee by any party hereto or any third party arising out of, in connection with, or as a result of (i) the execution or delivery of this Agreement, any other Supply and Offtake Security Agreement to which the SOA Collateral Agent is a party, or any amendment, amendment and restatement, modification or waiver of the provisions hereof or thereof, the performance by the parties hereto of their respective obligations hereunder or thereunder or the consummation of the transactions contemplated hereby or thereby, or (ii) any actual or prospective claim, litigation, investigation or proceeding relating to any of the foregoing, whether based on contract, tort or any other theory, whether brought by a third party or by such Grantor, and regardless of whether any Indemnitee is a party thereto; *provided*, that such indemnity shall not, as to any Indemnitee, be available to the extent that such losses, claims, damages, liabilities or related expenses (x) are determined by a court of competent jurisdiction by final and non-appealable judgment to have resulted from the bad faith, gross negligence or willful misconduct of such Indemnitee or its officers, partners, directors, trustees, agents, sub-agents, or (y) result from a claim brought by the Grantors against an Indemnitee or its officers, partners, directors, trustees, agents, sub-agents for material breach of such Indemnitee's obligations hereunder, solely if the Grantors have obtained a final and non-appealable judgment in its favor of such claim as determined by a court of competent jurisdiction.

33

SECTION 10.2    <u>SOA Collateral Agent May Perform; SOA Collateral Agent Appointed Attorney-in-Fact</u>.  If the Grantors fail to perform any covenants contained in this Agreement (including the Grantors' covenants to (a) pay the premiums in respect of all required insurance policies hereunder, (b) pay and discharge any taxes, assessments and special assessments, levies, fees and governmental charges imposed upon or assessed against, and landlords', carriers', mechanics', workmen's, repairmen's, laborers', materialmen's, suppliers' and warehousemen's Liens and other claims arising by operation of law against, all or any portion of the Pledged Collateral, (c) make repairs, (d) discharge Liens or (e) pay or perform any obligations of the Grantors under any Pledged Collateral) and such failure results in an Event of Default that has occurred and is continuing, the SOA Collateral Agent (and its agents or sub-agents) may (but shall not be obligated to) do the same or cause it to be done or remedy any such breach, and may expend funds for such purpose; provided that, the SOA Collateral Agent shall in no event be bound to inquire into the validity of any tax, Lien, imposition or other obligation that the Grantors fail to pay or perform as and when required hereby and that the Grantors do not contest in accordance with the provisions of the Supply and Offtake Agreement.  The Grantors shall pay any and all amounts so expended by the SOA Collateral Agent in accordance with the provisions of *Article VII* and *Section 16.19* of the Supply and Offtake Agreement.  Neither the provisions of this <u>Section 10.2</u> nor any action taken by the SOA Collateral Agent pursuant to the provisions of this <u>Section 10.2</u> shall prevent any such failure to observe any covenant contained in this Agreement nor any breach of representation or warranty from constituting an Event of Default.  The Grantors hereby appoint the SOA Collateral Agent as their attorney-in-fact, with full power and authority in the place and stead of the Grantors and in the name of the Grantors, or otherwise, from time to time during the occurrence and continuance of an Event of Default, in the SOA Collateral Agent's discretion to take any action and to execute any instrument consistent with the terms of the Supply and Offtake Agreement, this Agreement, the other Supply and Offtake Security Documents and the Master Transaction Agreement which the SOA Collateral Agent may deem necessary or advisable to accomplish the purposes hereof, including, in the case of any Trademarks, execute and deliver, and have recorded, any and all agreements, instruments, documents and papers as the SOA Collateral Agent may request to evidence the SOA Collateral Agent's (for the benefit of the Supply and Offtake Secured Parties) security interest in such Trademarks and the goodwill and the general intangibles of such Grantor relating thereto or represented thereby (but the SOA Collateral Agent shall not be obligated to and shall have no liability to the Grantors or any third party for failure to so do or take action).  The foregoing grant of authority is a power of attorney coupled with an interest and such appointment shall be irrevocable for the term hereof.  The Grantors hereby ratify all that such attorney shall lawfully do or cause to be done by virtue hereof.

SECTION 10.3    <u>Continuing Security Interest; Assignment</u>.  This Agreement shall create a continuing Lien on the Pledged Collateral and (a) shall be binding upon the Grantors, their respective successors and assigns and (b) inures, together with the rights and remedies of the SOA Collateral Agent hereunder, to the benefit of the Supply and Offtake Secured Parties and each of their respective successors, transferees and permitted assigns.  No other persons (including any other creditor of the Grantors) have any interest herein or any right or benefit with respect hereto.  Without limiting the generality of the foregoing <u>clause (b)</u>, any Supply and Offtake Secured Party may assign or otherwise transfer any indebtedness held by it (or other obligation owed to it) secured by this Agreement to any other person, and such other person shall thereupon become vested with all the benefits in respect thereof granted to such

Supply and Offtake Secured Party, herein or otherwise, subject to the provisions of the Supply and Offtake Agreement.

SECTION 10.4    Termination; Release.    This Agreement shall terminate upon the latest to occur of (a) the payment in full of all Secured Obligations and (b) the termination of the Supply and Offtake Agreement in accordance with its terms, including *Section 6.01*, *Section 6.02*, *Section 14.03* and *Section 14.04* of the Supply and Offtake Agreement.  Upon termination of this Agreement or upon any sale, transfer or other disposition of Pledged Collateral or any part thereof in a transaction or series of transactions not prohibited by the provisions of this Agreement and the Supply and Offtake Agreement (including upon any Pledged Collateral becoming property of an Excluded Subsidiary or a Foreign Subsidiary), the Pledged Collateral (or any part thereof) shall automatically be released from the Lien of this Agreement and all rights to the Pledged Collateral shall revert to the Grantors.  Upon such release or any such sale, transfer or disposition of Pledged Collateral or any part thereof, subject to the Intercreditor Agreements, the SOA Collateral Agent shall, upon the request and at the sole cost and expense of the Grantors, assign, transfer and deliver to the Grantors, against receipt and without recourse to or warranty by the SOA Collateral Agent except as to the fact that the SOA Collateral Agent has not encumbered the released assets, such of the Pledged Collateral or any part thereof to be released (in the case of a release) as may be in possession of the SOA Collateral Agent and as have been sold or otherwise applied pursuant to the terms hereof, and, with respect to any other Pledged Collateral, proper documents and instruments (including UCC-3 termination financing statements or releases) acknowledging the termination hereof or the release of such Pledged Collateral, as the case may be.

SECTION 10.5    Modification in Writing.    No amendment, modification, supplement, termination or waiver of or to any provision hereof, nor consent to any departure by the Grantors therefrom, shall be effective unless the same shall be made in accordance with the terms of the Supply and Offtake Agreement, as applicable, and, shall be in writing and signed by the SOA Collateral Agent and the Grantors.  Any amendment, modification or supplement of or to any provision hereof, any waiver of any provision hereof and any consent to any departure by the Grantors from the terms of any provision hereof in each case shall be effective only in the specific instance and for the specific purpose for which made or given.  Except where notice is specifically required by this Agreement or any other document evidencing the Secured Obligations, no notice to or demand on the Grantors in any case shall entitle the Grantors to any other or further notice or demand in similar or other circumstances.

SECTION 10.6    Notices.    Unless otherwise provided herein, in the Supply and Offtake Agreement, any notice or other communication herein required or permitted to be given shall be given in the manner and become effective as set forth in the Supply and Offtake Agreement and as to each party hereto, addressed to it at the address of such party set forth in the Supply and Offtake Agreement, as applicable, or in each case, at such other address as shall be designated by such party in a written notice to the other party complying as to delivery with the terms of this Section 10.6.

SECTION 10.7          Governing Law, Consent to Jurisdiction and Service of Process; Waiver of Jury Trial.

(a)          This Agreement shall be governed by and construed in accordance with the internal laws of the State of New York, without reference to conflict of law principles (except *Sections 5-1401* and *5-1402* of the New York General Obligations Law).

(b)          *Section 16.01(b)* and *(c)* and *Section 16.02* of the Supply and Offtake Agreement are incorporated herein, *mutatis mutandis*, as if set forth herein in their entirety.

SECTION 10.8          Severability of Provisions.  Any provision hereof which is invalid, illegal or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such invalidity, illegality or unenforceability without invalidating the remaining provisions hereof or affecting the validity, legality or enforceability of such provision in any other jurisdiction.

SECTION 10.9          Execution in Counterparts.  This Agreement and any amendments, waivers, consents or supplements hereto may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed to be an original, but all such counterparts together shall constitute one and the same agreement.  Delivery of a counterpart by electronic means shall be effective as manual delivery thereof.

SECTION 10.10         Business Days.  In the event any time period or any date provided in this Agreement ends or falls on a day other than a Business Day, then such time period shall be deemed to end and such date shall be deemed to fall on the next succeeding Business Day, and performance herein may be made on such Business Day, with the same force and effect as if made on such other day.

SECTION 10.11         No Credit for Payment of Taxes or Imposition.  No Grantor shall be entitled to any credit against any sums that may become payable under the terms thereof or hereof, by reason of the payment of any Tax on the Pledged Collateral or any part thereof.

SECTION 10.12         No Claims Against SOA Collateral Agent or other Supply and Offtake Secured Parties.  Nothing contained in this Agreement constitutes any consent or request by the SOA Collateral Agent or any other Supply and Offtake Secured Party, express or implied, for the performance of any labor or services or the furnishing of any materials or other property in respect of the Pledged Collateral or any part thereof, nor as giving the Grantors any right, power or authority to contract for or permit the performance of any labor or services or the furnishing of any materials or other property in such fashion as would permit the making of any claim against the SOA Collateral Agent or any other Supply and Offtake Secured Party in respect thereof or any claim that any Lien based on the performance of such labor or services or the furnishing of any such materials or other property is prior to the Lien hereof.

SECTION 10.13         No Release.  Nothing set forth in this Agreement or any other PESRM Transaction Document, nor the exercise by the SOA Collateral Agent of any of the rights or remedies hereunder, shall relieve the Grantors from the performance of any term, covenant, condition or agreement on the Grantors' part to be performed or observed under or in

36

respect of any of the Pledged Collateral or from any liability to any person under or in respect of any of the Pledged Collateral; or shall impose any obligation on the SOA Collateral Agent or any other Supply and Offtake Secured Party to perform or observe any such term, covenant, condition or agreement on the Grantors' part to be so performed or observed; or shall impose any liability on the SOA Collateral Agent or any other Supply and Offtake Secured Party for any act or omission on the part of the Grantors relating thereto or for any breach of any representation or warranty on the part of the Grantors contained in this Agreement, the Supply and Offtake Agreement, the other PESRM Transaction Documents, or under or in respect of the Pledged Collateral or made in connection herewith or therewith.   Anything herein to the contrary notwithstanding, neither the SOA Collateral Agent nor any other Supply and Offtake Secured Party shall have any obligation or liability under any contracts, agreements and other documents included in the Pledged Collateral by reason of this Agreement, nor shall the SOA Collateral Agent or any other Supply and Offtake Secured Party be obligated to perform any of the obligations or duties of the Grantors thereunder or to take any action to collect or enforce any such contract, agreement or other document included in the Pledged Collateral hereunder.  The obligations of the Grantors contained in this <u>Section 10.13</u> shall survive the termination hereof and the discharge of the Grantors' other obligations under this Agreement, the Supply and Offtake Agreement and the other PESRM Transaction Documents.

SECTION 10.14    <u>Obligations Absolute</u>.   All obligations of the Grantors hereunder are absolute and unconditional irrespective of: (a) any lack of validity or enforceability of the Supply and Offtake Agreement, any hedging agreement or any other PESRM Transaction Document; (b) any change in the time, manner or place of payment of, or in any other term of, all or any of the Secured Obligations, or any other amendment or waiver of or any consent to any departure from the Supply and Offtake Agreement, any hedging agreement or any other PESRM Transaction Document; (c) any pledge, exchange, release or non-perfection of any other collateral, or any release or amendment or waiver of or consent to any departure from any guarantee, for all or any of the Secured Obligations; (d) any exercise, non-exercise or waiver of any right, remedy, power or privilege under or in respect hereof, the Supply and Offtake Agreement, any hedging agreement or any other PESRM Transaction Document except as specifically set forth in a waiver granted pursuant to the provisions of <u>Section 10.5</u>; (e) any other circumstances that might otherwise constitute a defense (other than the defense of payment) available to, or a discharge of, the Grantors; or (f) any bankruptcy, insolvency, reorganization, arrangement, readjustment, composition, liquidation or the like of any Grantor.

SECTION 10.15    <u>Intercreditor Agreements</u>.   Notwithstanding anything herein to the contrary, the Lien and security interest granted to the SOA Collateral Agent pursuant to this Agreement and the exercise of any right or remedy by the SOA Collateral Agent hereunder are subject to the provisions of (a) the Intercreditor Agreement, dated as of August 7, 2018 (the "<u>Term Intercreditor Agreement</u>"), among Cortland Capital Market Services, LLC, as Term Loan Agent, MLC, ICBCS, and certain other persons party to or that may become party thereto from time to time and (b) the Amended and Restated Intercreditor Agreement, dated as of the date hereof (the "<u>MLC/ICBCS Intercreditor Agreement</u>" and, together with the Term Intercreditor Agreement, the "<u>Intercreditor Agreements</u>"), between MLC and ICBCS.  In the event of any conflict between the provisions of the Intercreditor Agreements and this Agreement, the provisions of the Intercreditor Agreements shall govern and control.  In the event of any conflict between the provisions of the MLC/ICBCS Intercreditor Agreement and the Term Intercreditor

Agreement, the provisions of the Term Intercreditor Agreement shall govern and control. In the event that the Term Intercreditor Agreement has terminated, all references to the Term Loan Agent herein will be deemed to refer to ICBCS as collateral agent under the MLC/ICBCS Intercreditor Agreement; in the event that the MLC/ICBCS Intercreditor Agreement has terminated, all references to MLC herein will be deemed to refer to the SOA Collateral Agent.

SECTION 10.16      Effect of this Agreement; Reaffirmation. This Agreement amends and restates in its entirety (but without novation) the Existing Security Agreement. Nothing in this Agreement is intended by any party, or may be construed by any party, to effect the continuing priority of the Liens of the Existing Security Agreement, as amended and restated by this Agreement, with respect to the Pledged Collateral. It is the intention of each of the parties hereto that the Existing Security Agreement be amended and restated in its entirety pursuant to this Agreement so as to preserve the perfection and priority of all security interests granted under the Existing Security Agreement, and that this Agreement does not constitute a novation or termination of the Existing Security Agreement. Each Grantor reaffirms the Liens created in favor of the SOA Collateral Agent on the Pledged Collateral to secure the Secured Obligations. Each Grantor hereby confirms that all Pledged Collateral encumbered thereby will continue to secure to the fullest extent possible the payment and performance of the Secured Obligations.

[*Remainder of Page Intentionally Left Blank*]

**ICBC STANDARD BANK PLC,**
as SOA Collateral Agent

By: _____

Name:

Title     James Willcock
           Legal Department
           ICBC Standard Bank Plc

KERRY BRISBANE
Director

[Signature page to Amended and Restated Pledge and Security Agreement]

**PHILADELPHIA ENERGY SOLUTIONS
REFINING AND MARKETING LLC**,
as Grantor

By: _____
Name:  Rachel Celiberti
Title     Chief Financial Officer

**PES ADMINISTRATIVE SERVICES, LLC**,
as Grantor

By: _____
Name:  Rachel Celiberti
Title     Chief Financial Officer

**PES HOLDINGS, LLC**,
as Grantor

By: _____
Name:  Rachel Celiberti
Title     Chief Financial Officer

**NORTH YARD GP, LLC**,
as Grantor

By: _____
Name:  Rachel Celiberti
Title     Chief Financial Officer

**NORTH YARD LOGISTICS, L.P.**, as Grantor

**By: NORTH YARD GP, LLC**,
its general partner

By: _____
Name:  Rachel Celiberti
Title     Chief Financial Officer

[Signature page to Amended and Restated Pledge and Security Agreement]

**EXHIBIT 1**

FORM OF
JOINDER AGREEMENT

[Name of New Grantor]
[Address of New Grantor]

[Date]

_____
_____
_____
_____

Ladies and Gentlemen:

Reference is made to the Amended and Restated Pledge and Security Agreement, dated as of June 18, 2019 (as amended, amended and restated, supplemented or otherwise modified from time to time in accordance with the provisions hereof, the "**Security Agreement**"), by and among PHILADELPHIA ENERGY SOLUTIONS REFINING AND MARKETING LLC, a Delaware limited liability company ("**PESRM**"), as grantor, the other Grantors party thereto (together with PESRM and any successors in such capacity, the "**Grantors**," and each a "**Grantor**"), in favor of ICBC STANDARD BANK PLC, in its capacity under the Supply and Offtake Security Documents as collateral agent on behalf of the Supply and Offtake Secured Parties (in such capacity and together with any successors in such capacity, the "**SOA Collateral Agent**"). Capitalized terms used but not otherwise defined herein have the meanings assigned to such terms in the Security Agreement.

This Joinder Agreement supplements the Security Agreement and is delivered by the undersigned, [_____] (the "**New Grantor**"), pursuant to Section 3.3 of the Security Agreement. The New Grantor hereby agrees to be bound as a Grantor party to the Security Agreement by all of the terms, covenants and conditions set forth in the Security Agreement to the same extent that it would have been bound if it had been a signatory to the Security Agreement on the date of the Security Agreement. Without limiting the generality of the foregoing, the New Grantor hereby grants and pledges to the SOA Collateral Agent, as collateral security for the full, prompt and complete payment and performance when due (whether at stated maturity, by acceleration or otherwise) of the Secured Obligations, a Lien on and security interest in, all of its right, title and interest in, to and under the Pledged Collateral and expressly assumes all obligations and liabilities of a Grantor under the Security Agreement. The New Grantor hereby makes each of the representations and warranties and agrees to each of the covenants applicable to the Grantor contained in the Security Agreement.

Exhibit 1-1

Annexed hereto are supplements to each of the schedules to the Security Agreement with respect to the New Grantor. Such supplements shall be deemed to be part of the Security Agreement.

This Joinder Agreement and any amendments, waivers, consents or supplements hereto may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed to be an original, but all such counterparts together shall constitute one and the same agreement.

THIS JOINDER AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES UNDER THIS JOINDER AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, WITHOUT REFERENCE TO CONFLICT OF LAW PRINCIPLES (EXCEPT *SECTIONS 5-1401* AND *5-1402* OF THE NEW YORK GENERAL OBLIGATIONS LAW).

[*Remainder of Page Intentionally Left Blank*]

Exhibit 1-2

IN WITNESS WHEREOF, the New Grantor has caused this Joinder Agreement to be executed and delivered by its duly authorized officer as of the date first above written.

[NEW GRANTOR]

By: _____
Name:
Title:

AGREED TO AND ACCEPTED:

**ICBC STANDARD BANK PLC**,
as SOA Collateral Agent

By: _____
Name:
Title:

By: _____
Name:
Title:

[*Schedules To Be Attached*]

Exhibit 1-3