IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>PES HOLDINGS, LLC, *et al.*,<br><br>                     Debtors.[1] | Chapter 11<br><br>Case No. 19-11626 (KG)<br><br>(Jointly Administered) |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF PES, INC.,<br><br>          Intervenor-Defendant and Counterclaim and Cross-Claim Plaintiff,<br><br>v.<br><br>PES HOLDINGS, LLC, *et al.*, and CORTLAND CAPITAL MARKET SERVICES, LLC,<br><br>          Plaintiffs and Counterclaim Defendants,<br><br>and<br><br>ICBC STANDARD BANK PLC,<br><br>          Defendant and Cross-Claim Defendant. | Adv. Pro. No. 19-50282 (KG) |

**MOTION OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS FOR ENTRY OF AN ORDER,
PURSUANT TO BANKRUPTCY CODE SECTIONS 1103(c) AND
1109(b), GRANTING LEAVE, STANDING, AND AUTHORITY
TO COMMENCE AND PROSECUTE THE REAL PROPERTY INSURANCE CLAIM**

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each Debtor's taxpayer identification number are as follows: PES Holdings, LLC (8157); North Yard GP, LLC (5458); North Yard Logistics, L.P. (5952); PES Administrative Services, LLC (3022); PES Energy Inc. (0661); PES Intermediate, LLC (0074); PES Ultimate Holdings, LLC (6061); and Philadelphia Energy Solutions Refining and Marketing LLC (9574). The Debtors' service address is: 1735 Market Street, Philadelphia, Pennsylvania 19103.

The Official Committee of Unsecured Creditors (the "Committee") of PES Holdings LLC and its affiliated debtors and debtors-in-possession in the above captioned Chapter 11 Cases (collectively, the "Debtors"), by and through its counsel, Brown Rudnick LLP and Elliott Greenleaf, P.C., respectfully submits this motion (the "Standing Motion") pursuant to Sections 1103(c) and 1109(b) of title 11 of the United States Code (as amended, the "Bankruptcy Code") for entry of an order, substantially in the form attached hereto as Exhibit A, granting the Committee leave, standing, and authority to commence and prosecute the Committee's lien avoidance claim regarding the Debtors' real property and casualty insurance (the "Real Property Insurance Claim") on behalf of the Chapter 11 estates, as described more fully herein and as asserted in Count III in the Committee's *Answer and Counterclaim and Cross-Claim* [D.I. 24] (the "Committee Complaint") filed in the insurance dispute adversary proceeding related to these Chapter 11 cases. In support of the Standing Motion, the Committee respectfully states as follows:

**PRELIMINARY STATEMENT**

1. The Committee hereby seeks leave, standing, and authority to commence, prosecute and, if appropriate, settle the Real Property Insurance Claim on behalf of the Debtors' estates. By way of background, the Committee has been granted standing to commence and prosecute the counts of its cross-claim (Counts I, II, and IV) pursuant to the *Stipulated And Agreed Order Among Debtors, Committee, ICBC Standard Bank PLC And Cortland Capital Market Services LLC In Connection With The Insurance Proceeds Adversary Proceeding* [D.I. 23] entered as an order of this Court on September 11, 2019. It now wishes to obtain standing to assert another count related to the perfection of Cortland's lien on any property and casualty

insurance recoveries received in respect to any damage done to real property by the Girard Point Explosion (as defined below).

2.  The Real Property Insurance Claim is premised on the same avoidance theory as the Committee has asserted in Count II of the Committee Complaint in respect to Cortland's purported lien on the BI Recoveries (as that term is defined in the Committee Complaint). Cortland failed to perfect its interest by being named as a loss payee under the Policy as required by state law. The Court's determination of this issue in the context of Count II (for which the Committee has been granted standing) will have *res judicata* effect on the Real Property Insurance Claim.

3.  As set forth more fully in the Committee Complaint, the Real Property Insurance Claim seeks the avoidance of liens regarding the priority and entitlement to recoveries the Debtors may receive with respect to the Debtors' real property insurance related to the Girard Point Explosion (as defined below). The Committee seeks authority to prosecute the Real Property Insurance Claim on behalf of the Debtors' estates.

4.  Through this Motion and the Committee Complaint, the Committee satisfies the standard for obtaining derivative standing in the Third Circuit. The Committee Complaint asserts a well-established, legally cognizable claim with particularity and ample factual support. Accordingly, the Real Property Insurance Claim satisfies the relatively low threshold of "colorability" used by this and other bankruptcy courts in the context of a committee standing motion.

5.  Additionally, under the circumstances of these cases, including the stipulations already agreed to by the Debtors under the Interim DIP Order (as defined below), seeking the consent of the Debtors to pursue the Real Property Insurance Claim would have been futile.

Accordingly, because of the Debtors' waiver of their rights to bring the Real Property Insurance Claim, the Court should grant the Committee exclusive authority to further investigate, commence, prosecute and, if appropriate, settle the Real Property Insurance Claim on behalf of the Debtors' estates.

6.  Further, given that such claim involves the same legal issues and undisputed facts as the perfection and avoidance argument in Count II of the Committee Complaint, granting it standing to assert the Real Property Insurance Claim will promote judicial economy. If the Real Property Insurance Claim is successful, any Real Property Recoveries (as that term is defined in the Committee Complaint) would be for the benefit of the estates and could substantially increase recoveries for general unsecured creditors in these Chapter 11 Cases. Thus, the potential benefits of pursuing the Real Property Insurance Claim are substantial and are in the best interests of general unsecured creditors and the estates.

## JURISDICTION AND VENUE

7.  This Court has jurisdiction to consider this Standing Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Standing Motion is a core proceeding under 28 U.S.C. §157(b). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are Bankruptcy Code Sections 105(a), 1103(c), and 1109(b).

8.  Pursuant to Local Rule 9013-1(f), the Committee consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

**BACKGROUND**

9. The Committee incorporates herein by reference the facts alleged in the Committee Complaint.

10. The Debtors are an American refining company based just outside Philadelphia, Pennsylvania. The Debtors' refining facility consisted of two separate refineries: Girard Point and Point Breeze (together, the "Refining Complex"). When fully operational, the Refining Complex had the capacity to refine 335,000 barrels of crude oil per day, and was the largest oil refining complex on the U.S. eastern seaboard. The Refining Complex produced a full range of transportation fuels, such as gasoline and ultra-low sulfur diesel, as well as other refined products, including home heating oil, jet fuel, kerosene, residual fuel oil, propane, refinery grade propylene, butane, cumene, and sulfur.

11. In 2018, the Debtors underwent an eight-month bankruptcy proceeding, emerging in August 2018. The Prior Plan (as defined in the First Day Declaration) provided for a capital infusion of $260 million, extended certain debt maturities, reduced debt service obligations, and provided the Debtors with access to a new intermediation facility.

12. Eight months after exiting bankruptcy, on June 21, 2019, there was a large-scale, catastrophic explosion at the alkylation unit at the Debtors' Girard Point refining facility (the "Girard Point Explosion"). The Debtors claim that the Girard Point Explosion caused substantial property damage and left the Girard Point refinery significantly damaged. Upon information and belief, certain hydrocarbons that are SOA Priority Collateral are still located at the Debtors' refinery complex, and, due to certain safety and environmental concerns, removing them and returning them to ICBC may cost in the tens of millions of dollars. This explosion pushed the Debtors back into bankruptcy for a second time a month after the explosion.

13. On July 21, 2019 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under Chapter 11 of title 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have continued to operate and manage their businesses as debtors-in-possession. These Chapter 11 cases are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

14. On August 5, 2019, the United States Trustee for Region 3 duly appointed the Committee. See *Notice of Appointment of Creditors' Committee of Unsecured Creditors* [D.I. 152]. On the same day, the Committee selected Brown Rudnick LLP and Elliott Greenleaf, P.C. as its counsel, subject to the Court's approval. Subsequently, the Committee selected Conway MacKenzie, Inc. as its financial advisor, subject to the Court's approval.

15. On August 7, 2019, the Debtors and Cortland Capital Market Services, LLC ("Cortland"), in its capacity as collateral agent for the prepetition term loan lenders, filed an adversary proceeding against ICBC Standard Bank PLC ("ICBCS"), the Debtors' intermediation lender. The Debtors and Cortland requested declaratory relief from the Bankruptcy Court, finding that any recoveries to be received from the Debtors' insurers on account of the business interruption portion of the Debtors' casualty insurance policy (the "Policy") as a result of the Girard Point Explosion constitute Term Loan Priority Collateral with a lien senior to that of ICBCS.

16. As set forth more fully in the Committee Complaint, the Committee has a different view as to the rights and priority to the Debtors' business interruption recoveries: any such recoveries constitute after-acquired property as to which no pre-petition liens can attach. Furthermore, because Cortland is not a "loss payee" under the Policy, Cortland does not have a properly perfected lien on either the BI Recoveries or the Real Property Recoveries.

17. The Court has granted standing to the Committee to prosecute the causes of action herein related to the BI Recoveries. *Stipulation and Agreed Order Among Debtors, Committee, ICBC Standard Bank PLC and Cortland Capital Market Services LLC in Connection With the Insurance Proceeds Adversary Proceeding* (the "Agreed Order") [D.I. 23]. The Committee filed the Committee Complaint on September 13, 2019, and the Debtors and Cortland answered that Committee Complaint (including Count III) on September 24, 2019. See *Response to UCC Answer and Counterclaim and Cross-Claim* [D.I. 29] at ¶¶ 63-69. With respect to the Real Property Insurance Claim, the Debtors have thus far refused to consent to the Committee's standing. See id. at ¶ 9, Affirmative Defense 2.

18. Because the Interim DIP Order (as defined below) finds and adjudges that the Debtors have stipulated to the validity and perfection of Cortland's purported lien on the Real Property Recoveries, the Committee is the only party in interest able to challenge such lien.

## RELIEF REQUESTED

19. The Committee hereby respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the Committee leave, standing, and authority to commence, prosecute and, if appropriate, settle the Real Property Insurance Claim for and on behalf of the Chapter 11 estates of the Debtors.

## BASIS FOR RELIEF

### I. Applicable Legal Standard

20. It is well-settled within this Circuit that bankruptcy courts may allow, under appropriate circumstances, a creditors' committee to pursue causes of action on behalf of the estate. See Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery, 330 F.3d 548, 575 (3d Cir. 2003) ("We believe that Sections 1109(b) [and] 1103(c)(5) . . . evince

Congress's approval of derivative avoidance actions by creditors' committees, and that bankruptcy courts' equitable powers enable them to authorize such suits as a remedy in cases where a debtor-in-possession unreasonably refuses to pursue an avoidance claim."); see also Official Comm. of Unsecured Creditors v. Barron (In re Polaroid Corp.), No. 03-56404, 2004 WL 1397582, at *2 (Bankr. D. Del. June 22, 2004); Official Comm. of Unsecured Creditors v. Cablevision Sys. Corp. (In re Valley Media, Inc.), No. 01-11353, 2003 WL 21956410, at *2 (Bankr. D. Del. Aug. 14, 2003); Official Comm. of Unsecured Creditors v. Clark (In re Nat'l Forge Co.), 304 B.R. 214, 223 (Bankr. W.D. Pa. 2004), aff'd 326 B.R. 532, 563 (W.D. Pa. 2005).

21. Although the Bankruptcy Code does not expressly authorize a creditors' committee the standing to initiate an adversary proceeding and/or to pursue other causes of action typically brought by the trustee or the debtor-in-possession, the Bankruptcy Code did establish creditors' committees for the express purpose of protecting the rights of their constituents and similarly situated creditors. See H.R. Rep. No. 95-595, at 91-92 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6053-54.

22. To achieve this purpose, Bankruptcy Code Section 1103(c), which enumerates the statutory functions of a creditors' committee, authorizes creditors' committees to "perform such other services as are in the interest of those represented." 11 U.S.C. §1103(c)(5). To that end, Bankruptcy Code Section 1109(b) provides, in pertinent part, that:

> A party in interest, including the debtor, the trustee, *a creditors' committee*, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

11 U.S.C. §1109(b) (emphasis added).

23. Indeed, this general right to be heard would ring hollow unless creditors' committees are also given the right to act, on behalf of the estate, if a debtor-in-possession or a trustee that is explicitly granted the right to act for the estate unjustifiably fails to act. See Official Comm. Of Unsecured Creditors of Cybergenics Corp., 330 F.3d at 568-69 (holding that Bankruptcy Code Sections 1103(c)(5) and 1109(b) implicitly authorize a court to grant a creditors' committee derivative standing to prosecute an avoidance action when the trustee or debtor-in-possession cannot or will not do so, or when the debtor-in-possession is unlikely to act); In re Joyanna Holitogs, Inc., 21 B.R. 323, 326 (Bankr. S.D.N.Y. 1982) (holding that the general right to be heard would be empty unless those who have such a right are also given the right to act when the debtors refuse to do so); see also In re iPCS, Inc., 297 B.R. 283, 290 (Bankr. N.D. Ga. 2003) ("[I]f a debtor has a cognizable claim, but refuses to pursue that claim, an important objective of the Code [the recovery and collection of estate property] would be impeded if the bankruptcy court has no power to authorize another party to proceed on behalf of the estate in the debtor's stead.").

24. Courts in the Third Circuit have granted creditors' committees standing in connection with claims similar to the Real Property Insurance Claim asserted here by operation of their equitable powers. See Official Comm. of Unsecured Creditors of Cybergenics Corp., 330 F.3d at 568 (holding that "the ability to confer derivative standing upon creditors' committees is a straightforward application of bankruptcy courts' equitable powers."); see also Official Comm. of Unsecured Creditors v. Credit Suisse First Bos. (In re Exide Techs., Inc.), 299 B.R. 732, 739 (Bankr. D. Del. 2003).

25. Moreover, the practice of conferring standing upon creditors' committees to pursue actions on behalf of a bankruptcy estate is widely followed and accepted in other

jurisdictions as well. See, e.g., Contractor Creditor's Comm. v. Fed. Ins. Co. (In re La. World Exposition, Inc.), 832 F.2d 1391, 1397 (5th Cir. 1987) (discussing how "[a] number of bankruptcy courts have held that in some circumstances, a creditors' committee has standing under 11 U.S.C. §1103(c)(5) and/or §1109(b) to file suit on behalf of debtors-in-possession…or the trustee."); Unsecured Creditors Comm. v. Noyes (In re STN Enters.), 779 F.2d 901, 904 (2d Cir. 1985) (concurring with those bankruptcy courts that have held that Bankruptcy Code Sections 1103(c)(5) and 1109(b) imply a qualified right for creditors' committees to initiate litigation with the approval of the bankruptcy court).

II.   **The Committee Satisfies The Requirements For Obtaining Derivative Standing**

26.  In the Third Circuit, where an official committee seeks to pursue an action without the consent of the debtor, the committee must satisfy a three-part test to be granted derivative standing. See Infinity Inv'rs Ltd. v. Kingsborough (In re Yes! Entm't Corp.), 316 B.R. 141, 145 (D. Del. 2004):

> (i) a colorable claim exists;
> (ii) the debtor-in-possession unjustifiably refuses to pursue the colorable claim; and
> (iii) the bankruptcy court grants the committee permission to initiate the action on behalf of the debtor's estate.

Id. at 145; see also Walnut Creek Mining Co. v. Cascade Inv., LLC (In re Optim Energy, LLC), 527 B.R. 169, 173 (D. Del. 2015) ("Derivative standing requires a party to show three elements: '(1) a colorable claim, (2) that the trustee unjustifiably refused to pursue the claim, and (3) the permission of the bankruptcy court to initiate the action.'") (quoting In re Yes! Entm't. Corp., 316 B.R. at 145).[2]

---

[2]  The first and second Cybergenics factors present an overlapping inquiry, in that a debtor in possession's refusal to pursue a claim is unjustifiable where the claim is colorable and "there [is] potential for a considerable benefit

27. The Committee satisfies each of the aforementioned elements of this test and, accordingly, should be granted derivative standing to further pursue the Real Property Insurance Claim.

### A. The Real Property Insurance Claim Asserted In The Committee Complaint Is "Colorable"

28. Asserting a "colorable claim" is a relatively low threshold to satisfy, requiring the court to "undertake the same analysis as when a defendant moves to dismiss a complaint for failure to state a claim." In re Centaur, LLC, No. 10-10799 (KJC), 2010 WL 4624910, at *4 (Bankr. D. Del. Nov. 5, 2010);[3] July 30, 2008 Hr'g Tr. at 44:15-24, In re Distributed Energy Sys., Corp., Case No. 08-11101 (KG) (Bankr. D. Del.) [D.I. 315] (noting that the colorability standard is less than a Rule 12(b)(6) standard and requires only plausibility and that the claims be not "without merit"); see also In re Adelphia Commc'ns Corp., 330 B.R. 364, 376 (Bankr. S.D.N.Y. 2005) ("Caselaw construing requirements for 'colorable' claims has made it clear that the required showing is a relatively easy one to make."); Official Comm. of Unsecured Creditors v. Hudson United Bank (In re Am.'s Hobby Ctr., Inc.), 223 B.R. 275, 288 (Bankr. S.D.N.Y. 1998) (observing that only if the claim is "facially defective" should standing be denied).

29. Moreover, in determining whether a claim is "colorable," this Court need not conduct a mini-trial. Rather, "the Court may weigh the 'probability of success and financial recovery,' as well as the anticipated costs of litigation as part of a cost/benefit analysis conducted to determine whether the pursuit of the colorable claims are likely to benefit the estate." In re

---

to the estate." Official Comm. of Unsecured Creditors v. CIBC Wood Gundy Ventures, Inc. (In re Temtechco, Inc.), No. 95-00596, 1998 WL 887526, at *7 (Bankr. D. Del. Dec. 18, 1998) (citing In re STN Enters., 779 F.2d 901, 905 (2d Cir. 1985)).

[3] The standard courts apply when considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is related to the pleading requirements of Federal Rule of Civil Procedure 8. See In re Fedders N. Am., Inc., 405 B.R. 527, 537 (Bankr. D. Del. 2009). "Rule 8(a) of the Federal Rules of Civil Procedure . . . requires only that a complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Id. (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957).

iPCS, Inc., 297 B.R. at 291 (citations omitted). Therefore, the Committee need only establish to this Court the existence of a plausible claim and that the Real Property Insurance Claim has value to the Debtors' estates and their creditors.

30. The Committee Complaint asserts a plausible and valid avoidance claim against Cortland under sections 544(a) and 551 of the Bankruptcy Code as it relates to Cortland's purported lien on real property insurance recoveries. As the Committee alleges in the Committee Complaint, any lien that Cortland has on the Real Property Recoveries is unperfected because Cortland is not named as a loss payee or mortgagee under the Policy.

31. Under the "strong arm" provision of Section 544(a)(1) of the Bankruptcy Code, a bankruptcy trustee (or a debtor-in-possession) has the status of a hypothetical judgment lien creditor as of the petition date. See 11 U.S.C. § 544(a); accord 11 U.S.C. § 1107. With this status, the trustee or debtor-in-possession is "entitled to the benefits derived from relevant state laws governing the priority of liens." In re Cerrato, 504 B.R. 23, 31 (Bankr. E.D.N.Y.2014) (citing In re Kors, Inc., 819 F.2d 19, 22–23 (2d Cir.1987)). Accordingly, a trustee can avoid a security interest if applicable non-bankruptcy law provides such rights and powers to a hypothetical or judicial lien creditor. Carr v. Loeser (In re Int'l Auction and Appraisal Servs. LLC), 493 B.R. 460, 463 (Bankr. M.D. Pa. 2013) ("Section 544 enables a trustee to use state law to avoid any transfer that an unsecured creditor could have avoided outside of bankruptcy.").

32. An unperfected lien, if one exists, is subordinate to a hypothetical lien creditor for purposes of section 544 avoidance. See Hassett v. Revlon, Inc. (In re O.P.M. Leasing Services, Inc.), 23 B.R. 104, 119 (Bankr. S.D.N.Y. 1982) (noting that unperfected liens are avoidable under state law by judgement lien creditors). Therefore, the Committee has articulated a colorable claim to avoid Cortland's purported lien on the Real Property Recoveries.

33. Additionally, the Real Property Insurance Claim rests on the same facts and legal theory as Count II of the Committee Complaint, as to which the Committee has already been granted standing: because Cortland was not named loss payee under the Policy, it does not have a perfected lien on the recoveries received pursuant to claims made on the Policy, and its unperfected lien can be avoided. Any ruling by this Court with respect to the perfection of Cortland's purported lien on the BI Recoveries may prevent the Committee from raising the same issue with respect to Cortland's purported lien on the Real Property Recoveries. See, e.g., Herrera v. Wyoming, 139 S.Ct. 1686, 1697 (2019) ("Under the doctrine of issue preclusion, 'a prior judgment . . . foreclose[s] successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment.") (quoting New Hampshire v. Maine, 532 U.S. 742, 748-49 (2001)); SuperMedia LLC v. Yellow Pages Photos, Inc. (In re SuperMedia LLC), 540 B.R. 85, 91 (Bankr. D. Del. 2015) ("'When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same claim or a different claim.'") (quoting Restatement (Second) of Judgments § 27 (1982)). Moreover, any ruling with respect to the perfection of Cortland's lien on the Policy may become the law of the case, such that it could limit the Committee's ability (or the Debtors' ability) to challenge Cortland's lien. See, e.g., Fagan v. City of Vineland, 22 F.3d 1283, 1290 (3d Cir. 1994) ("The law of the case doctrine limits the extent to which an issue will be reconsidered once the court has made a ruling on it."); Jones Lang LaSalle Americas, Inc. v. Int'l Brotherhood of Elec. Workers, 338 F. Supp. 3d 381, 385 (D. Del. 2018) ("Absent extraordinary circumstances, the law of the case doctrine cautions against revisiting previously decided issues at later stages of a case."). If the Committee is not granted standing to pursue the

Real Property Insurance Claim in the context of this adversary proceeding, this Court's ruling on Count II may thus preclude any consideration of Count III. Allowing the Committee to bring both Counts II and III simultaneously would thus preserve estate assets and promote judicial economy.

### B. The Debtors Have Unjustifiably Refused To Bring The Real Property Insurance Claim

34. The second element of the derivative standing test requires that the Committee show that the Debtors have unjustifiably refused to pursue the Real Property Insurance Claim. See In re Yes! Entm't. Corp., 316 B.R. at 145 (citing In re Valley Media Inc., 2003 WL 21956410, at *2).

35. "A debtor's failure to bring a claim is deemed to be unjustifiable when the committee has presented a colorable claim that on appropriate proof would support recovery, and the action is likely to benefit the reorganization estate." In re Adelphia Commc'ns Corp., 330 B.R. at 374 n.19 (citing In re STN Enters., 779 F.2d at 905). A creditor need only show that a debtor was "unable or unwilling to pursue claims" on the estate's behalf. In re Newcorn Enters. Ltd., 287 B.R. 744, 749-50 (Bankr. E.D. Mo. 2002); see also La. World Exposition v. Fed. Ins. Co., 858 F.2d 233, 253 (5th Cir. 1988) (finding that "[w]here the interests of an estate and its creditors are impaired by the refusal of a trustee or a debtor-in-possession to initiate adversary proceedings to recover property of the estate, . . . that refusal [is] unjustified").

36. A creditor is not required to make a formal demand on a debtor to pursue a claim where that demand would be futile. See G-I Holdings, Inc. v. Those Parties Listed on Exhibit A (In re G-I Holdings, Inc.), 313 B.R. 612, 630 (Bankr. D.N.J. 2004) ("[A] debtor's refusal to pursue an avoidance action can be implied even where no formal demand has been made by a creditors committee.") In re Nat'l Forge Co., 326 B.R. at 544-45 (finding that a formal request

would have been futile and that the debtor could not have "seriously entertained the idea" of contesting bank's claims because under interim and final DIP orders, the debtor waived its rights to contest those very claims); see also 7 Collier on Bankruptcy ¶1109.05 [2][a] (Richard Levin & Henry J. Sommer eds., 16th ed.) ("[I]f the demand is presumptively futile under the circumstances...the failure to make the demand...does not prevent the court from authorizing [a creditor or] some other party in interest from pursuing the matter on behalf of the estate.").

37. On September 23, 2019, this Court entered the *Interim Order (I) Authorizing Debtors To (A) Obtain Post-Petition Financing Pursuant To 11 U.S.C. §§ 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) And 364(e) And (B) Utilize Cash Collateral Pursuant To 11 U.S.C. § 363, (II) Granting Adequate Protection To Prepetition Secured Parties Pursuant To 11 U.S.C. §§ 361, 362, 363, 364 And 507(b) And (III) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c)* [D.I. 85] (the "Interim DIP Order"). In paragraph 5(c) of the Interim DIP Order, the Court "found, determined, ordered and adjudged" that the Debtors "admit, acknowledge, stipulate and agree that . . . the liens and security interests granted to the Existing Term Loan Secured Parties . . . are (i) valid, binding, perfected, enforceable, first-priority liens and security interests in the Term Loan Priority Collateral . . . ." Paragraph 5(d) contains the stipulation that "the proceeds of any claim under the Debtors' property damage and/or business interruption insurance policies, relating directly or indirectly, to [the Girard Point Explosion] . . . constitute Term Loan Priority Collateral."

38. Here, the Debtors have not challenged Cortland's purported lien on the Real Property Recoveries, and have stipulated that Cortland has a perfected first priority lien on the Real Property Recoveries. That stipulation renders any demand by the Committee to bring such challenge futile. See Interim DIP Order at ¶¶ 5(c-d). Given the Debtors' stipulation, the

Committee asked the Debtors to consent to the Committee's standing to bring the Real Property Insurance Claim, and the Debtors have not agreed. Therefore, the Committee has met the second prong of the derivative standing test.

### C. By This Standing Motion, The Committee Is Seeking Court Approval To Pursue The Real Property Insurance Claim

39. Finally, as to the third element of the derivative standing test, the Committee by this Standing Motion seeks the permission of this Court to initiate the Real Property Insurance Claim against the Defendants identified in the Committee Complaint. As such, the Committee respectfully submits that it has satisfied all three elements of the derivative standing test.

### RESERVATION OF RIGHTS

40. The Committee reserves its rights to (i) supplement this Standing Motion and the Committee Complaint (including by adding additional counts to the Committee Complaint) at any time prior to the hearing on the same, and (ii) seek authority to commence, prosecute, and settle other claims and/or causes of action on behalf of the Debtors' estates against the Defendants identified in the Committee Complaint or any other party.

### NO PRIOR REQUEST

41. No prior request for the relief sought herein has been made by the Committee to this or any other court.

### CONCLUSION

**WHEREFORE**, the Committee requests that the Court (i) grant the Standing Motion, (ii) grant the Committee leave, standing and authority to commence, prosecute, and, if appropriate,

settle the Real Property Insurance Claim set forth in the Committee Complaint on behalf of the Debtors' estates, and (iii) grant the Committee such other and further relief as is just and proper.

Dated: October 4, 2019

**ELLIOTT GREENLEAF, P.C.**

*/s/ Jonathan M. Stemerman*
Rafael X. Zahralddin-Aravena (No. 4166)
Jonathan Stemerman (No. 4510)
1105 N. Market Street, Suite 1700
Wilmington, DE  19801
Telephone:  (302) 384-9400
Email:  rxza@elliottgreenleaf.com
jms@elliottgreenleaf.com

- and -

**BROWN RUDNICK LLP**
Robert J. Stark (admitted *pro hac vice*)
Max D. Schlan (admitted *pro hac vice*)
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Email: rstark@brownrudnick.com
mschlan@brownrudnick.com

- and -

James W. Stoll (admitted *pro hac vice*)
Steven B. Levine (admitted *pro hac vice*)
Sharon I. Dwoskin (admitted *pro hac vice*)
One Financial Center
Boston, MA 02111
Telephone: (617) 856-8200
Email: jstoll@brownrudnick.com
slevine@brownrudnick.com
sdwoskin@brownrudnick.com

*Counsel to the Official Committee
of Unsecured Creditors*